IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENDURO RESOURCE PARTNERS LLC, *et al.*,<br><br>Debtors.[1] | ) Chapter 11<br>)<br>) Case No. 18-11174 (KG)<br>)<br>) (Jointly Administered)<br>)<br>) **Ref. Docket No. 20** |

**ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF ASSETS OF THE DEBTORS, (II) APPROVING FORM AND MANNER OF NOTICE, (III) SCHEDULING AUCTION AND SALE HEARING, (IV) AUTHORIZING PROCEDURES GOVERNING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND UNEXPIRED LEASES, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "*Motion*")[2] of the Debtors, for the entry of an order (i) approving bidding procedures, substantially in the form attached as Annex 1 hereto (the "*Bidding Procedures*"), to govern the marketing and sale of substantially all of the Debtors' assets (the "*Assets*"), and approving bid protections in connection therewith, (ii) authorizing the Debtors to schedule an auction to sell the Assets (the "*Auction*") and scheduling the hearing to approve a sale of the Assets (the "*Sale Hearing*"), (iii) approving the form and manner of notice of the proposed sale transactions, the Bidding Procedures, the Auction, the Sale Hearing, and related dates and deadlines, (iv) authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "*Assumed Contracts*") to the prevailing

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's United States federal tax identification number, if applicable, or other applicable identification number, are: Enduro Resource Partners LLC (6288); Enduro Resource Holdings LLC (5571); Enduro Operating LLC (7513); Enduro Management Company LLC (5932); Washakie Midstream Services LLC (7562); and Washakie Pipeline Company LLC (7798). The debtors' mailing address is 777 Main Street, Suite 800, Fort Worth, Texas 76102.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse Agreements and the Motion, as applicable, and to the extent of any inconsistency in the defined terms, the Stalking Horse Agreements shall govern.

bidder(s) acquiring the Debtors' assets (each, a "*Successful Bidder*"), and (v) granting related relief, as more fully described in the Motion; and upon the Debtors' having filed the *Notice of Filing of Proposed Purchase and Sale Agreement* [Docket No. _] (the "*Comstock* Notice") in connection with the Debtors' sale process for the North Louisiana Asset Package; and the Court having reviewed the Motion and the First Day Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter an order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion and the Comstock Notice has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

**FOUND AND CONCLUDED THAT:**[3]

A.      The statutory bases for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "*Bankruptcy Code*") and rules 2002, 3007, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.  Good and sufficient notice of the Motion and the Comstock Notice was given to: (a) the United States Trustee for the District of Delaware; (b) counsel to the agent and lenders for the Debtors' prepetition first lien credit facility; (c) counsel to the agent and lenders under the Debtors' prepetition second lien credit facility; (d) counsel to the Debtors' prepetition majority equity owner; (e) counsel to the Stalking Horse Bidders; (f) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (g) the United States Attorney's Office for the District of Delaware; (h) the attorneys general for the states in which the Debtors conduct business; and (i) all parties entitled to notice pursuant to Local Rule 2002.

C.  The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion regarding the sales process, including (a) the payment of the Breakup Fee and Expense Reimbursement, if necessary, to the Stalking Horse Bidders in accordance with the Stalking Horse Agreements, (b) the scheduling of a Bid Deadline (as defined in the Bidding Procedures), the Auction, and the Sale Hearing with respect to the proposed sale of the Assets, (c) the establishment of procedures to fix the Cure Amounts (as defined below) to be paid pursuant section 365 of the Bankruptcy Code of in connection with the assumption, assignment, and/or transfer of the Assigned Contracts, and (d) approval and authorization to serve the Sale Notice.

D.  On June [6], 2018, Enduro Operating and Comstock Oil & Gas-Louisiana, LLC ("*Comstock*") entered into that certain Purchase and Sale Agreement (the "*North Louisiana Stalking Horse Agreement*"), and Comstock constitutes a Stalking Horse Bidder as provided in the Motion and this Order, and the North Louisiana Stalking Horse Agreement constitutes a Stalking Horse Agreement as provided in the Motion and this Order.

3

E.  The Sale Notice (annexed to the Motion as **Exhibit D**) is reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction, the Sale Hearing, and the Sale.

F.  The Cure Notice (annexed to the Motion as **Exhibit C**) is reasonably calculated to provide all non-Debtor counterparties (the "*Counterparties*") to the Debtors' executory contracts and unexpired leases (each, a "*Contract*" and, collectively, the "*Contracts*") with reasonable and proper notice of the potential assumption and assignment of their Contract and any cure amounts relating thereto, although the mere listing of any Contract on the Cure Notice does not require or guaranty that such Contract will be assumed and assigned and all rights of the Debtors with respect to such Contracts are reserved (including, but not limited to, with respect to whether any Contract constitutes an executory contract).

G.  The Stalking Horse Agreements and their terms were negotiated by the Debtors, their advisors and the Stalking Horse Bidders in good faith and at arms-length.

H.  The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Assets.

I.  The Debtors have demonstrated that the Breakup Fee and Expense Reimbursement are actual and necessary costs and expenses of preserving the Debtors' estate, within the meaning of section 503(b) of the Bankruptcy Code, and of substantial benefit to the Debtors' estates by inducing a stalking horse bidding floor, which has established a bid standard or minimum for other bidders for the Assets, thereby ensuring that during the Auction, the Debtors receive the highest or best bids possible for the Assets.

J.  The entry of this Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED as set forth herein.

2. The Bidding Procedures, substantially in the form attached hereto as **Annex 1**, are hereby approved. The Debtors are authorized, but not directed, to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3. All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

4. The Sale Notice, substantially in the form attached to the Motion as **Exhibit D**, is hereby approved and shall be served within three (3) business days of entry of this Order, upon the Notice Parties identified in the Motion, those entities and individuals appearing on the Debtors' creditor matrix, and any party that has asserted any interest in any of the Assets in the twelve (12) months prepetition. Service of the Sale Notice as described above shall be sufficient and proper notice of the Sale and sale process contemplated by this Order with respect to all known interested parties.

5. Within ten (10) business days of entry of this Order, the Debtors shall publish the Publication Notice, substantially similar to the Sale Notice, in the *Wall Street Journal* and the *Fort Worth Star-Telegram*. Publication of the Publication Notice as described above shall be sufficient and proper notice of the sale and sale process contemplated by this Order with respect to all unknown parties.

6. The Cure Notice, substantially in the form attached to the Motion as **Exhibit C**, is hereby approved. The Cure Notice shall identify the Contracts of the Debtors that may be assumed and assigned in connection with the sale of the Debtors' assets and provide the

US-DOCS\101584945.6

corresponding cure amounts that the Debtors believe must be paid to cure all defaults under each of the Contracts as contemplated by section 365 of the Bankruptcy Code (the "***Cure Amounts***"). No later than five (5) business days after entry of this Order, the Debtors shall serve the Cure Notice on all Counterparties. If at any time after the issuance of the Cure Notice but prior to the Sale Hearing it is discovered that a Contract should have been listed on the Executory Contracts Schedule but was not (any such Contract, a "***Previously Omitted Contract***"), the Debtors shall, promptly following discovery thereof (but in no event later than five (5) Business Days following discovery thereof), file and serve a notice on the non-Debtor counterparty(ies) to such Previously Omitted Contract notifying such counterparties of the Debtors' intention to assume and assign such Previously Omitted Contract to the Successful Bidder, including the proposed Cure Costs relating thereto (the "***Previously Omitted Contract Notice***"), *provided however*, that the Debtors shall not serve Previously Omitted Contract Notices on applicable non-Debtor counterparty(ies) after July 5, 2018.

7. Notwithstanding anything to the contrary in the Motion, any objection to any aspect of the relief requested in the Motion must: (a) be in writing and filed with this Court; (b) comply with the Bankruptcy Rules; (c) set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estates or properties, the basis for the objection, and the specific grounds therefor; and (d) be served upon (so as to be received by) the following parties (collectively, the "***Objection Notice Parties***") by the applicable deadline established in this Order:

> a. counsel to the Debtors, (i) Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn: Caroline A. Reckler (caroline.reckler@lw.com), Matthew L. Warren (matthew.warren@lw.com) and Jason B. Gott (jason.gott@lw.com), and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801,

6

Attn: Michael R. Nestor (mnestor@ycst.com) and Kara Hammond Coyle (kcoyle@ycst.com);

b. the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda Casey);

c. counsel to the First Lien Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Damian Schaible (damian.schaible@davispolk.com) and Aryeh Falk (aryeh.falk@davispolk.com)

d. counsel to the Stalking Horse Bidders, (i) with respect to the North Dakota Asset Package, Sherill & Gibson PLLC, 3711 Maplewood Avenue, Suite 200, Wichita Falls, Texas 76308, Attn: R. Caven Crosnoe (ccrosnoe@sgpllc.law) and D. Todd Davenport (tdavenport@sgpllc.law), (ii) with respect to the Wyoming Asset Package, Conner & Winters, LLP, 4000 One Williams Center, Tulsa, OK 74172, Attn.: J. Ryan Sacra (rsacra@cwlaw.com), and (iii) with respect to the North Louisiana Asset Package and the Trust Related Assets Package, Locke Lord LLP, JPMorgan Chase Tower, 600 Travis, Suite 2800 Houston, Texas 77002, Attn.: David Patton (dpatton@lockelord.com) and Philip Eisenberg (peisenberg@lockelord.com);

e. counsel for the statutory committee appointed in the Chapter 11 Cases, if one is appointed; and

f. those parties who have formally filed requests for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

8. Objections, if any, to the relief requested in the Motion to be considered at the Sale Hearing, other than objections expressly described in paragraphs 9 or 10 of this Order, must be filed and served upon (such as to be received by) the Objection Notice Parties, **on or before 5:00 p.m. (Prevailing Eastern Time) on July 2, 2018 (the "*Sale Objection Deadline*")**. For the avoidance of doubt, all parties in interest reserve and maintain the right to raise any objection relating to the conduct of the Auction during the Sale Hearing.

9. Each Counterparty shall have until the earlier to occur of (x) 5:00 p.m. (prevailing Eastern time) on the date that is fourteen (14) days after the filing and service by the Debtors to the Counterparty of the Cure Notice or the Previously Omitted Contract Notice (as applicable), and (y) the Sale Hearing (the "*Contract Objection Deadline*") to file and serve upon the

Objection Notice Parties any objection to the assumption and assignment of such Counterparty's Contract on any grounds, including, without limitation, the amount of the Cure Costs, but excluding any objection as to adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code or on the basis of the identity of the Successful Bidder. Any such objection must be filed and served on the Objection Notice Parties, so as to be actually received by the Contract Objection Deadline. Any unresolved such objections shall be heard at the Sale Hearing, unless otherwise agreed by the parties. If any objections to the amount of Cure Costs remain unresolved as of the date of the Closing of the Sale of any Asset Package, the Debtors may deposit the disputed amount of Cure Costs relating to such Asset Package in a segregated account to hold pending resolution of such objections.

10. Each Counterparty may raise objections as to adequate assurance of future performance or on the basis of the identity of the Successful Bidder until the earlier to occur of (x) 5:00 p.m. (prevailing Eastern time) on the date that is fourteen (14) days after the filing and service by the Debtors to the Counterparty of a notice identifying the applicable Successful Bidder, which, for the avoidance of doubt, may be provided with the Cure Notice or the Previously Omitted Contract Notice or at any time thereafter with respect to the Stalking Horse Bidders, and (y) the Sale Hearing (the "***Buyer Specific Objection Deadline***"). Any such objection must be filed and served on the Objection Notice Parties, so as to be actually received by the Buyer Specific Objection Deadline. Any unresolved such objections shall be heard at the Sale Hearing, unless otherwise agreed by the parties.

11. Following receipt of the Cure Notice, each Counterparty may submit fax or email contact information and a request for specific information as to adequate assurance under section 365 of the Bankruptcy Code (an "***Adequate Assurance Information Request***") with regards to

that Counterparty's Contract and the applicable Stalking Horse Bid or, after the conclusion of the Auction, the Successful Bid (as defined in the Bidding Procedures). All Adequate Assurance Information Requests must be submitted to counsel to the Debtors: (a) Latham & Watkins LLP, facsimile: (312) 993-9767, Attn: Caroline A. Reckler (caroline.reckler@lw.com), Matthew L. Warren (matthew.warren@lw.com) and Jason B. Gott (jason.gott@lw.com), and (b) Young Conaway Stargatt & Taylor, LLP, facsimile: (302) 576-3472, Attn: Michael R. Nestor (mnestor@ycst.com) and Kara Hammond Coyle (kcoyle@ycst.com). The Debtors shall respond to each Adequate Assurance Information Request at the submitted fax number or email address no later than twenty-four (24) hours after receipt of such Adequate Assurance Information Request or, if later, twenty-four (24) hours after receipt of the applicable adequate assurance information from the applicable bidder. The Debtors shall notify any Counterparty making an Adequate Assurance Information Request of the identity of the Successful Bidder as to such Counterparty's Contract within the earlier of twelve (12) hours after the conclusion of the Auction or four (4) hours prior to the Sale Hearing.

12.     Unless the Counterparty to any Contract timely files an objection to its Cure Amount or to the assumption and assignment of its Contract and timely serves a copy of such objection upon the Objection Notice Parties in accordance with this Order, such Counterparty shall forever be barred and estopped from objecting (a) to the Cure Amount as the amount to cure all defaults to satisfy section 365 of the Bankruptcy Code and from asserting that any additional amounts are due or defaults exist, (b) that any conditions to assumption and assignment must be satisfied under such Contract before it can be assumed and assigned or that any required consent to assignment has not been given, or (c) that the Successful Bidder has not

provided adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code.

13. The inclusion of a Contract or other agreement on the Cure Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such Contract or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto are hereby reserved.

14. Promptly following the Debtors' selection of the Successful Bid(s) (as defined in the Bidding Procedures) and the conclusion of the Auction, the Debtors shall announce the Successful Bid(s) and Successful Bidders(s) and shall file with the Bankruptcy Court a notice of the Successful Bid(s) and Successful Bidders(s). If a Counterparty does not object to: (a) the Cure Amount for its Contracts; (b) the ability of the Successful Bidders(s) (including the Stalking Horse Bidder(s) or such other Successful Bidders(s)) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code; or (c) any other matter pertaining to assumption or assignment, then the Cure Amounts owed to such Counterparty shall be paid as soon as reasonably practicable after the effective date of the assumption and assignment of such Contract.

15. In the event of a timely filed objection by a Counterparty regarding: (a) any Cure Amount with respect to any of the Contracts, the Cure Amounts owed to such Counterparty shall be paid as soon as reasonably practicable after the later of (i) the effective date of the assumption and assignment of such Contract, and (ii) the entry of a final order that resolves the dispute and approves the assumption and assignment of such Contract.

US-DOCS\101584945.6

16. The Debtors are authorized to conduct the Auction as set forth in the Bidding Procedures.

17. Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

18. No entity, other than the Stalking Horse Bidders, shall be entitled to any expense reimbursement, break-up fee, "topping," termination, contribution, or other similar fee or payment.

19. **The Bid Deadline is July 11, 2018 at 5:00 p.m. (Prevailing Eastern Time). The Auction shall commence on July 17, 2018 at 10:00 a.m. (Prevailing Eastern Time). The Sale Hearing will be conducted on July 20, 2018 at 10:00 a.m. (Prevailing Eastern Time). The Sale Orders will be entered on or before July 27, 2018 at 5:00 p.m. (Prevailing Eastern Time).** The Debtors may seek the entry of one or more orders of this Court at the Sale Hearing approving and authorizing the Sale to the Stalking Horse Bidders or the highest or otherwise best offer(s) at the Auction, as applicable, on terms and conditions consistent with the applicable purchase agreement (the "*Sale Orders*"). The Debtors shall file a proposed form of Sale Orders no later forty-eight (48) hours prior to the Sale Hearing, *provided* that the Debtors reserve the right to amend the proposed form of Sale Orders at any time before or during the Sale Hearing (subject to the filing or public announcement during the Sale Hearing of the same). The Sale Hearing may be adjourned or rescheduled without notice other than a notice filed with the Court or by an announcement of the adjourned date at the Sale Hearing.

20. Any party in interest may attend the Auction; *provided however* such party in interest shall provide notice not later than forty eight (48) hours before the commencement of the Auction to counsel to the Debtor: (a) Latham & Watkins LLP, facsimile: (312) 993-9767, Attn:

11

Caroline A. Reckler (caroline.reckler@lw.com), Matthew L. Warren (matthew.warren@lw.com) and Jason B. Gott (jason.gott@lw.com), and (b) Young Conaway Stargatt & Taylor, LLP, facsimile: (302) 576-3472, Attn: Michael R. Nestor (mnestor@ycst.com) and Kara Hammond Coyle (kcoyle@ycst.com), and *provided further*, that the Debtors reserve their rights to contest the propriety of any such party's attendance during the Auction.

21. The Expense Reimbursement of each Stalking Horse Bidder, as set forth in the Stalking Horse Agreements, is approved; *provided, however* that,

    a. in connection with the Debtors' sale process for North Dakota Asset Package the Expense Reimbursement shall equal the reasonable, documented, out-of-pocket costs and expenses incurred by Cobra up to a maximum amount of $450,000.00;

    b. in connection with the Debtors' sale process for Wyoming Asset Package the Expense Reimbursement shall equal the reasonable, documented, out-of-pocket costs and expenses incurred by Mid-Con up to a maximum amount of $75,000.00;

    c. in connection with the Debtors' sale process for the North Louisiana Asset Package the Expense Reimbursement shall equal the reasonable, documented, out-of-pocket costs and expenses incurred by Comstock up to a maximum amount of $200,000.00; and

    d. in connection with the Debtors' sale process for Trust Related Assets Package the Expense Reimbursement shall equal the reasonable, documented, out-of-pocket costs and expenses incurred by Evolution up to a maximum amount of $275,000.00.

22. The Breakup Fees are approved in the amount of:

    a. $1,350,000.00 for the North Dakota Package;

    b. $100,000.00 for the Wyoming Package;

    c. $600,000.00 for the North Louisiana Asset Package; and

    d. $825,000.00 for the Trust Related Assets Package.

The Breakup Fees shall be paid pursuant to the terms of the Stalking Horse Agreements.

23. The obligation of the Debtors to pay the Expense Reimbursement and Breakup Fees: (i) shall be entitled to administrative expense claim status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code (but for the avoidance of doubt and notwithstanding anything in any Stalking Horse Agreement to the contrary, shall not be entitled to superpriority administrative expense claim status); (ii) shall not be subordinate to any other administrative expense claim against the Debtors or any adequate protection order in existence as of the date hereof except as set forth in the Bidding Procedures; (iii) shall survive the termination of the Stalking Horse Agreements; and (iv) shall be payable at the times set forth in the Stalking Horse Agreement. For the avoidance of doubt: (a) as set forth in paragraphs 21 and 22 above, any applicable Bid Protections, Expense Reimbursement and/or Breakup Fee payable to any Stalking Horse Bidder shall be paid in accordance with the terms of the applicable Stalking Horse Agreement; and (b) any applicable Bid Protections, Expense Reimbursement and/or Breakup Fees shall be paid from the proceeds arising from the consummation of any applicable Alternative Transaction or Superior Proposal free and clear of all Liens and prior to any other distribution of such proceeds, and any applicable Sale Order shall require that any applicable Bid Protections, Expense Reimbursement and/or Breakup Fee be paid from the proceeds arising from the consummation of any such Alternative Transaction or Superior Proposal free and clear of all

US-DOCS\101584945.6

Liens and prior to any other distribution of such proceeds. The First Lien Lenders will make no credit bid on any Asset Package subject to a Stalking Horse Agreement.

24. Notice of the Motion as provided therein shall be deemed good and sufficient notice, and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice or otherwise deemed waived.

25. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

26. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

27. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

28. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June 11, 2018
Wilmington, Delaware

_____
Kevin Gross
United States Bankruptcy Judge

14