## ANNEX 1

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENDURO RESOURCE PARTNERS LLC, *et al.*, | ) | Case No. 18-11174 (KG) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | |

---

## BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

---

On [ ● ], 2018, the United States Bankruptcy Court for the District of Delaware (the "***Court***") entered the *Order (I) Approving Bidding Procedures in Connection with Sale of Assets of the Debtors, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale Hearing, (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases, and (V) Granting Related Relief* [Docket No. ___] (the "***Bidding Procedures Order***"),[2] by which the Court approved the following procedures (the "***Bidding Procedures***"). These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "***Auction***") for the sale (the "***Sale***") of substantially all of the Debtors' assets in one or more packages (each, an "***Asset Package***," and, collectively, the "***Assets***") to be determined with the consent of the Majority First Lien Lenders (as defined below), which shall initially consist of:

- the North Dakota Package;

- the Wyoming Package;

- the North Louisiana Package; and

- the Trust Related Assets Package.

For the avoidance of doubt, interested parties may bid on any Asset Packages individually or in any combination, including all of the Assets.

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's United States federal tax identification number, if applicable, or other applicable identification number, are: Enduro Resource Partners LLC (6288); Enduro Resource Holdings LLC (5571); Enduro Operating LLC (7513); Enduro Management Company LLC (5932); Washakie Midstream Services LLC (7562); and Washakie Pipeline Company LLC (7798). The debtors' mailing address is 777 Main Street, Suite 800, Fort Worth, Texas 76102.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

1. **Submissions to the Debtors**.

    All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "*Notice Parties*"):

A.     **Debtors**. Enduro Resource Partners, 777 Main Street, Suite 800, Fort Worth, Texas 76102, Attn: Jonny Brumley (jsbrumley@endurores.com) and Kim Weimer (kweimer@endurores.com).

B.     **Debtors' Proposed Counsel**. Proposed Counsel to the Debtors, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn: Caroline Reckler (caroline.reckler@lw.com) and Matthew Warren (matthew.warren@lw.com); and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael Nestor (mnestor@ycst.com) and Kara Coyle (kcoyle@ycst.com).

C.     **Debtors' Proposed Financial Advisors**. Proposed financial advisors to the Debtors, Evercore Group L.L.C. ("*Evercore*"), 55 East 52nd Street, New York, New York 10055, Attn: Stephen Hannan (hannan@evercore.com) and Matthew Moss (matthew.moss@evercore.com); and Alvarez & Marsal North America, LLC ("*A&M*"), 2100 Ross Avenue, Dallas, Texas 75201, Attn: Jim Grady (jgrady@alvarezandmarsal.com) and Taylor Atwood (tatwood@alvarezandmarsal.com).

D.     **Counsel to First Lien Agent**. Counsel to the agent under the Debtors' first lien credit facility (the "*First Lien Agent*," and the lenders holding more than 50 percent of the outstanding loans under such credit facility, the "*Majority First Lien Lenders*"), Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Damian S. Schaible and Aryeh Ethan Falk (enduro.auction@davispolk.com).

E.     **Financial Advisors to First Lien Agent**. Financial advisors to the First Lien Agent, RPA Advisors, LLC, One Rockefeller Plaza, Tenth Floor, New York, New York 10020, Attn: Barry Kesler (bkesler@rpaadvisors.com).

2. **Potential Bidders**.

    To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity (other than any Stalking Horse Bidder) interested in consummating a Sale (a "*Potential Bidder*") must deliver or have previously delivered, if determined to be necessary by the Debtors in their sole discretion:

(i)     an executed confidentiality agreement on terms acceptable to the Debtors (a "*Confidentiality Agreement*"), to the extent not already executed; and

(ii)     the most current audited and latest unaudited financial statements (the "*Financials*") of the Potential Bidder (or, if the Potential Bidder is an

entity formed for the purpose of acquiring the Assets (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors and the Majority First Lien Lenders, and (y) a written commitment acceptable to the Debtors and their advisors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the applicable Sale).

## 3.   Stalking Horse Bidders.

The Debtors have entered into agreements (each, a "*Stalking Horse Agreement*") with parties (each, a "*Stalking Horse Bidder*") who will act as stalking horse for the each Asset Package.

## 4.   Qualified Bidders.

(a)   A "*Qualified Bidder*" is a Potential Bidder whose Financials, or the Financials of its equity holder(s), as applicable, demonstrate the financial capability to consummate the Sale, whose Bid is a Qualified Bid, and that the Debtors, with the consent of the Majority First Lien Lenders,[3] determine should be considered a Qualified Bidder. Within two business days after the Bid Deadline, the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder with respect to a particular Asset Package and shall provide to the Stalking Horse Bidder for such Asset Package (if any) a copy of each Qualified Bid submitted by a Qualified Bidder relating to such Asset Package. Each Stalking Horse Bidder shall be deemed a Qualified Bidder at all times and for all purposes with respect to the Asset Package to which its Bid (each, a "*Stalking Horse Bid*") relates, and notwithstanding anything in these Bidding Procedures, each Stalking Horse Bid shall be deemed a Qualified Bid for all purposes.

(b)   If any Potential Bidder is determined by the Debtors and the Majority First Lien Lenders not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit and all accumulated interest thereon on or within five business days after the Bid Deadline.

(c)   Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Except as otherwise set forth in an applicable Stalking Horse Agreement, without the written consent of the Debtors and the Majority First Lien Lenders, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in

---

[3]   In each instance in these Bidding Procedures where the consent of the Majority First Lien Lenders is required, an email or, solely during the Auction, verbal confirmation, from counsel to the First Lien Agent to proposed counsel to the Debtors shall be sufficient to confirm such consent.

these Bidding Procedures; *provided that* any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

**5.      Due Diligence.**

Only Potential Bidders that, upon submission of a Qualified Bid, will be Qualified Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors. **No Qualified Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement.** The Debtors will provide to each Qualified Bidder reasonable due diligence information, as requested by such Qualified Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence provided to any Qualified Bidder to the Debtors' electronic data room. For all Qualified Bidders other than the Stalking Horse Bidders, the due diligence period will end on the Bid Deadline, and subsequent to the expiration of the due diligence period, the Debtors shall have no obligation to furnish any due diligence information. Each Stalking Horse Bidder's due diligence period has expired or will expire in accordance with the applicable Stalking Horse Agreement.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale to any person except to a Qualified Bidder or to such Qualified Bidder's duly authorized representatives to the extent expressly permitted by the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Qualified Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Qualified Bidders who, at such time and in the Debtors' reasonable business judgment after consultation with the First Lien Agent, have not established, or who have raised doubt, that such Qualified Bidder intends in good faith to, or has the capacity to, consummate the applicable Sale.

The Debtors also reserve the right, subject to the terms of any Stalking Horse Agreement, to withhold any diligence materials that the Debtors determine are sensitive after notifying the Qualified Bidder requesting such materials of such determination. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Qualified Bidder in accordance with these Bidding Procedures.

**All due diligence requests must be directed to Evercore Group L.L.C., 55 East 52nd Street, New York, New York 10055, Attention: Matthew Moss; Phone number: (646) 264-2384; Email: matthew.moss@evercore.com.**

**(a)      Communications with Qualified Bidders.**

Notwithstanding anything to the contrary in these Bidding Procedures, all direct communications between and amongst Qualified Bidders regarding the Debtors or their Assets shall involve the Debtors and the Debtors' advisors. No Potential Bidder shall communicate with any other Potential Bidder absent prior written consent from the Debtors.

US-DOCS\101584951.3

**(b)**     **Due Diligence from Qualified Bidders**.

Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Qualified Bidder to consummate the applicable Sale. Failure by a Qualified Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, with the consent of the Majority First Lien Lenders, that such bidder is no longer a Qualified Bidder or that a bid made by such Qualified Bidder is not a Qualified Bid.

The Debtors, the First Lien Agent, the First Lien Lenders (as defined below), and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable Confidentiality Agreement or the confidentiality provisions under the First Lien Credit Agreement, if applicable, except as otherwise set forth in this section of these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable Confidentiality Agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information:  (i) with the prior written consent of such bidder; (ii) to the bidder disclosing the confidential information; and (iii) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

**6.**     **Bid Requirements**.

A proposal, solicitation, or offer (each, a "***Bid***") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (the "***Bid Requirements***") as determined by the Debtors, in their reasonable business judgment, and with the consent of the Majority First Lien Lenders, shall constitute a "***Qualified Bid***").  Each Stalking Horse Agreement will be deemed a Qualified Bid for all purposes.

**(a)**     **Assets**. Each Bid must clearly state which assets and liabilities of the Debtors that the Qualified Bidders are agreeing to purchase and assume.

**(b)**     **Purchase Price**. Each Bid must clearly set forth the purchase price to be paid for the applicable Asset Package, including and identifying separately any cash and non-cash components, which non-cash components shall be limited only to credit-bids (the "***Purchase Price***").  Each Bid must also specify how the Purchase Price is allocated among the Assets within the applicable Asset Package and, if the Bid is for assets in more than one Asset Package, how the Purchase Price is allocated among the applicable Asset Packages.

**(c)**     **Minimum Bid**. The aggregate consideration proposed by each Bid must equal or exceed the sum of (the "***Minimum Bid***"):

- $47,800,000 in cash for the North Dakota Package;

- $5,675,000 in cash for the Wyoming Package;

- $21,300,000 in cash for the North Louisiana Package; and

- $29,100,000 in cash for the Trust Related Assets Package.

**(d)     Deposit**.  Each Bid, other than a Stalking Horse Bid, must be accompanied by a cash deposit in the amount equal to 10 percent of the aggregate cash and non-cash Purchase Price of the Bid, to be held in a segregated account to be identified and established by the Debtors (the "***Deposit***").  Except with respect to a Stalking Horse Bid, the Debtors reserve the right, with the consent of the Majority First Lien Lenders, to increase the percentage of the Purchase Price to be included in the Deposit.

**(e)     Assumption of Obligations**.  Each Bid must expressly assume all of the obligations contemplated to be assumed by, and on terms no less favorable to the Debtors than, the applicable Stalking Horse Agreement (if any), as determined in the Debtors' business judgment, and after consultation with the Majority First Lien Lenders.  If no Stalking Horse Agreement exists as to the Asset Package subject to such Bid, the Bid must expressly state all the obligations to be assumed by the Bidder pursuant to such Bid.  Other than the obligations to be assumed, the Assets shall be sold free and clear of all liens, claims, interests, and encumbrances (collectively, the "***Encumbrances***"), and any Encumbrances shall attach to the net proceeds of the Sales after payment of any applicable Bid Protections.

**(f)     The Same or Better Terms**.  In addition to the Purchase Price meeting or exceeding the applicable Minimum Bid, each Bid must be on terms that are not more burdensome or conditional, in the Debtors' business judgment and after consultation with the First Lien Agent, than the terms of the applicable Stalking Horse Agreement (if any).  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid and shall include a schedule of assumed contracts to the extent applicable to the Bid.  If a Stalking Horse Agreement exists as to the Asset Package subject to the Bid, each Bid must be based on the form of the applicable Stalking Horse Agreement and must include a copy of the applicable Stalking Horse Agreement clearly marked to show all changes requested by the Qualified Bidder, including those relating to the respective Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid (the "***Qualified Bid Documents***").

**(g)     Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the Sale set forth in its Bid with cash on hand, each Bid must include committed financing documented to the satisfaction of the Debtors and the Majority First Lien Lenders that demonstrates that the Qualified Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the Assets and the proposed transactions.  Such funding commitments or other financing must not be subject to any internal approvals,

syndication requirements, diligence, or credit committee approvals, and shall have only those covenants and conditions acceptable to the Debtors and the Majority First Lien Lenders.

(h)     **Contingencies; No Financing or Diligence Outs**.   A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome, in the Debtors' business judgment, and after consultation with the First Lien Agent, than those set forth in the applicable Stalking Horse Agreement (if any).

(i)     **Identity**.   Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Qualified Bidder if such Qualified Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific persons and counsel whom Evercore and Latham & Watkins LLP should contact regarding such Bid.

(j)     **Demonstrated Financial Capacity**.   A Qualified Bidder must have, in the Debtors' business judgment, with the consent of the Majority First Lien Lenders, the necessary financial capacity to consummate the proposed transactions required by its Bid (including, if necessary, to obtain transfer of any of the Debtors' permits and to obtain any necessary surety bonds or other financial assurances) and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

(k)     **Time Frame for Closing**.   Closing of the Sale as to any Asset Package related to a Bid by a Qualified Bidder (a "*Closing*") must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors and the Majority First Lien Lenders.

(l)     **Binding and Irrevocable**.   Except as provided herein, a Qualified Bidder's Bid for a particular Asset Package shall be irrevocable unless and until the Debtors accept a higher Bid for such Asset Package and such Qualified Bidder is not selected as the Backup Bidder for such Asset Package.  If selected as Backup Bidder, such Bid shall be irrevocable until the Closing of a Successful Bid for such Asset Package.

(m)     **Expenses; Disclaimer of Fees**.   Each Bid (other than a Stalking Horse Bid) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bidders) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

7

(n)    **Authorization**. Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors and the Majority First Lien Lenders) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(o)    **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Bid.

(p)    **Adherence to Bid Procedures**.  By submitting its Bid, each Qualified Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(q)    **Regulatory Approvals and Covenants**.  A Bid must set forth each regulatory and third-party approval required for the Qualified Bidder to consummate the applicable Sale, if any, and the time period within which the Qualified Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible) and any undertakings that will be required by the Debtors in connection with such regulatory and third party approvals.

(r)    **Consent to Jurisdiction**.  The Qualified Bidder must submit to the jurisdiction of and entry of final orders by the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, the construction and enforcement of these Bidding Procedures, the transaction documents related to the Sale, and the Closing, as applicable.

(s)    **Bid Deadline.** Each Bid must be transmitted via email (in .pdf or similar format) so as to be ***actually received*** on or before 5:00 p.m. (prevailing Eastern Time) on July 11, 2018 (the "***Bid Deadline***") by:

    (i)    The Debtors, Enduro Resource Partners, 777 Main Street, Suite 800, Fort Worth, Texas 76102, Attn:  Jonny Brumley (jsbrumley@endurores.com) and Kim Weimer (kweimer@endurores.com);

    (ii)   Proposed counsel to the Debtors, Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn:  Caroline Reckler (caroline.reckler@lw.com) and Matthew Warren (matthew.warren@lw.com);

    (iii)  Proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware

19801, Attn:   Michael Nestor (mnestor@ycst.com) and Kara Coyle (kcoyle@ycst.com);

(iv)    Proposed financial advisors to the Debtors, Evercore, 55 East 52nd Street, New York, New York 10055, Attn:   Stephen Hannan (hannan@evercore.com) and Matthew Moss (matthew.moss@evercore.com);

(v)    Counsel to the applicable Stalking Horse Bidder, if any;

(vi)    Counsel to the First Lien Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn:   Damian S. Schaible and Aryeh Ethan Falk (enduro.auction@davispolk.com); and

(vii)    Financial advisors to the First Lien Agent, RPA Advisors, LLC, One Rockefeller Plaza, Tenth Floor, New York, New York 10020, Attn:  Barry Kesler (bkesler@rpaadvisors.com).

## 7.    Right to Credit Bid.

For purposes hereof, should the First Lien Agent and/or the lenders under the First Lien Credit Agreement[4] (the "*First Lien Lenders*") submit a credit bid, the First Lien Agent and/or First Lien Lenders shall be deemed to be a Qualified Bidder, and any such credit bid shall be considered a Qualified Bid and may be submitted at any time prior to or at the Auction provided that it otherwise complies with the requirements for a Qualified Bid as set forth above, provided, that, (a) in the case of a credit bid by the First Lien Agent, the First Lien Agent shall have provided the Debtors with copies of any direction by the Lenders under the First Lien Credit Agreement to authorize the submission of such credit bid by the First Lien Agent, and (b) notwithstanding anything to the contrary in these Bidding Procedures, from and after the submission of such credit bid, the Debtors shall not be required to consult with the First Lien Agent or First Lien Lenders or obtain the consent of the First Lien Agent or Majority First Lien Lenders in connection with the sale of the Asset Package subject to such credit bid unless and until such credit bid is withdrawn in writing by the First Lien Agent and/or First Lien Lenders, as applicable; *provided* that neither the First Lien Agent nor the First Lien Lenders shall be entitled to any Bid Protections (as defined in these Bidding Procedures). Credit bids, if any, by the First Lien Agent and/or First Lien Lenders will not impair or otherwise affect the Stalking Horse Bidders' entitlement to the Bid Protections granted under the Bidding Procedures Order; *provided* that the First Lien Lenders shall not be entitled to make such a credit bid as to any Asset Package which is subject to a Stalking Horse Agreement which exceeds the Stalking Horse Bid as to that Asset Package.

---

[4]    "*First Lien Credit Agreement*" means that certain Amended and Restated Credit Agreement, dated as of August 1, 2013, by and among Enduro Resource Partners LLC, as borrower, Bank of America, N.A., as administrative agent, and the lenders and other parties thereto (as subsequently modified, amended, or supplemented from time to time).

8.    **Auction**.

If the Debtors receive a Qualified Bid for a given Asset Package, other than the applicable Stalking Horse Bid for such Asset Package, if any, the Debtors will conduct the Auction to determine the Successful Bidders with respect to such Asset Package. If the Debtors do not receive a Qualified Bid for a given Asset Package (other than the Stalking Horse Bid for such Asset Package, if applicable), the Debtors will not conduct the Auction as to such Asset Package and shall designate the Stalking Horse Bidder's Bid for such Asset Package, if any, as the Successful Bid for such Asset Package.

No later than 2 calendar days after the Bid Deadline, by 5:00 p.m. (prevailing Eastern time), the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid for the Asset Package for which such Qualified Bidder submitted a Bid, as determined in the Debtors' reasonable business judgment, with the consent of the Majority First Lien Lenders (the "*Baseline Bid*"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder. The determination of which Qualified Bid constitutes the Baseline Bid for each Asset Package and which Qualified Bid constitutes the Successful Bid for each Asset Package shall take into account any factors the Debtors, after consultation with the First Lien Agent, reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the number, type, and nature of any changes to the applicable Stalking Horse Agreement, if any, requested by the Qualified Bidder, including the type and amount of Assets sought and obligations to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the applicable Sale and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "*Bid Assessment Criteria*").

If an Asset Package is subject to a Stalking Horse Agreement, and if a Qualified Bid by a bidder other than a Stalking Horse Bidder is selected as to the Baseline Bid for that Asset Package, then the Stalking Horse Bidder may elect to match any such Baseline Bid and the bid by the Stalking Horse Bidder shall therefore be considered the Baseline Bid for purposes of any Auction relating to that Asset Package. In matching any such Baseline Bid, the Stalking Horse Bidder shall be entitled to a credit against the amount of any such matching bid equal to the amount of the Stalking Horse Bidder's Bid Protections pursuant to the Applicable Stalking Horse Agreement to take into account that, if the Stalking Horse is the Successful Bidder (as defined below), no payment of the Stalking Horse's Bid Protections will be required. Conversely, if a Bidder other than the Stalking Horse Bidder is the Successful Bidder as to any Asset Package subject to a Stalking Horse Agreement, the net proceeds available to the Selling Debtor will be reduced by the amount of the applicable Bid Protections payable to the Stalking Horse Bidder.

The Auction shall take place at 10:00 a.m. (prevailing Central time) on July 1̶6̶ 17, 2018, at the offices of Latham & Watkins LLP, 811 South Main Street, Suite 3700, Houston, Texas 77002, or such later date and time as selected by the Debtors with the consent of the Majority First Lien Lenders. The Debtors shall file a notice of the date and time for the Auction no later than 5:00 p.m. (prevailing Eastern time) on July 13, 2018. The Auction shall be conducted in a timely fashion according to the following procedures:

10

**(a)    The Debtors Shall Conduct the Auction**.

The Debtors and their advisors shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid for each Asset Package. All incremental Bids made thereafter for a given Asset Package shall be Overbids (defined below) for such Asset Package and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids on such Asset Package.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only the Debtors, the Qualified Bidders, the First Lien Agent, any First Lien Lender, and each such parties' respective legal and financial advisors shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives.  Only Qualified Bidders shall be entitled to bid at the Auction.

**(b)    Terms of Overbids**.

"***Overbid***" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid and accepted by the Debtors as a higher or otherwise better bid.  Each applicable Overbid must comply with the following conditions:

(i)    **Minimum Overbid Increment**. The initial Overbid for a given Asset Package, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Baseline Bid for such Asset Package, giving effect to the credit for the Bid Protections for any Stalking Horse Bid that is a Baseline Bid (as described below), by an incremental amount that is not less than:

- $100,000 for the North Dakota Package;

- $500,000 for the Wyoming Package;

- $500,000 for the North Louisiana Package; and

- $500,000 for the Trust Related Assets Package (each, a "***Minimum Overbid Increment***"), with any Overbid for multiple Asset Packages incorporating an aggregate incremental amount equal to the sum of each applicable Minimum Overbid Increment;

(such initial Overbid, the "***Initial Minimum Overbid***"); and each successive applicable Overbid for a given Asset Package shall exceed the then-existing Overbid for such Asset Package by an incremental amount that is not less than the Minimum Overbid Increment, with any Overbid for multiple Asset Packages incorporating an aggregate incremental amount equal to the sum of each applicable Minimum Overbid Increment. Except as otherwise provided in any Stalking Horse Agreement, the

Debtors reserve the right, after consultation with the First Lien Agent, to announce reductions in the Minimum Overbid Increment for a given Asset Package at any time during the Auction, other than with respect to the Initial Minimum Overbid. For the avoidance of doubt, if any Overbid is made as to any Asset Package for which there is a Stalking Horse Agreement, the Stalking Horse Bidder shall be entitled to a dollar-for-dollar credit against the amount of any such Overbid equal to the amount of the Stalking Horse Bidder's Bid Protections pursuant to the Applicable Stalking Horse Agreement to take into account that, if the Stalking Horse is the Successful Bidder (as defined below), no payment of the Stalking Horse's Bid Protections will be required. Conversely, if a Bidder other than the Stalking Horse Bidder is the Successful Bidder as to any Asset Package subject to a Stalking Horse Agreement, the net proceeds available to the Selling Debtor will be reduced by the amount of the applicable Bid Protections of the Stalking Horse Bidder.

(ii)     **Consideration**. Additional consideration in excess of the amount set forth in the respective Baseline Bid may include: (a) cash and/or noncash consideration; *provided, however*, that the value for such noncash consideration shall be determined by the Debtors in their reasonable business judgment, with the consent of the Majority First Lien Lenders; (b) in the case of a Bid by the First Lien Agent or the First Lien Lenders, subject to Section 6 of these Bid Procedures, a credit bid of up to the full amount of the First Lien Lenders' allowed secured claims, *provided, however*, that nothing herein shall impact any parties' rights with respect to either (I) challenges to the liens or claims of the First Lien Agent or the First Lien Lenders, including any challenges under section 363(k) of the Bankruptcy Code, or (II) assertions under section 506(c) of the Bankruptcy Code or the effects that such challenges or assertions have, if any, on the ability of the First Lien Agent or the First Lien Lenders to credit bid; and (c) in the case of a Bid by the Stalking Horse Bidder, a credit against the Bid equal to the full amount of the Stalking Horse Bidder's Bid Protections under the applicable Stalking Horse Agreement.

(iii)    **Conclusion of Each Overbid Round**. Upon the solicitation of each round of applicable Overbids, the Debtors, with the consent of the Majority First Lien Lenders, may announce a deadline (as the Debtors may, in their business judgment, and with the consent of the Majority First Lien Lenders, extend from time to time, the "***Overbid Round Deadline***") by which time any Overbids must be submitted to the Debtors.

(iv)    **Overbid Alterations**. An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, and after consultation with the First Lien Agent, but shall otherwise comply with the terms of these Bidding Procedures.

12

(v)    **Announcing Highest Bid**.  Subject to the rights of any Stalking Horse Bidder, subsequent to each Overbid Round Deadline, the Debtors, with the consent of the Majority First Lien Lenders, shall announce for each Asset Package whether the Debtors have identified in the initial applicable Overbid round, an Overbid as being higher or otherwise better than the Initial Minimum Overbid for such Asset Package, or in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid for a given Asset Package (for each Asset Package, the "*Prevailing Highest Bid*").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

    **(c)**    **Consideration of Overbids**.

    The Debtors reserve the right, in their reasonable business judgment, and with the consent of the Majority First Lien Lenders, to adjourn the Auction one or more times to, among other things: (i) facilitate discussions between the Debtors and Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, and with the consent of the Majority First Lien Lenders, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

    **(d)**    **Closing the Auction**.

    (i)    The Auction shall continue until there is only one Bid for each Asset Package that the Debtors determine, in their reasonable business judgment, with the consent of the Majority First Lien Lenders, to be the highest or otherwise best Bid for such Asset Package.  Such Bid shall be declared the "*Successful Bid*," for such Asset Package and such Qualified Bidder, the "*Successful Bidder*" for such Asset Package at which point the Auction will be closed as to that Asset Package.  The Auction shall not close with respect to any Asset Package unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid.  Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

    (ii)    For the avoidance of doubt, but without limiting the Bid Protections or the provisions of any Stalking Horse Agreement, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law.

US-DOCS\101584951.3

(iii) The Debtors shall have no obligation to consider any Bids or Overbids submitted after the conclusion of the Auction, and may not consider any such Bid if a Stalking Horse Bidder has made the Successful Bid or the Backup Bid, and any such Bids or Overbids shall be deemed untimely and shall not constitute a Qualified Bid unless the Debtors, with the consent of the Majority First Lien Lenders, permit such Bid or Overbid.

(iv) As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Qualified Bid Documents for each Successful Bid and Backup Bid to be filed with the Court.

**(e)** **No Collusion; Good-Faith *Bona Fide* Offer**.

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction on the terms of its Qualified Bid if selected as the Successful Bidder.

**9.    Backup Bidder**.

(a) Notwithstanding anything in these Bidding Procedures to the contrary, but subject to the terms of any Stalking Horse Agreement, if an Auction is conducted for a given Asset Package, the Qualified Bidder with the next-highest or otherwise second-best Bid at the Auction for such Asset Package, as determined by the Debtors in the exercise of their reasonable business judgment, and with the consent of the Majority First Lien Lenders (the "***Backup Bid***"), shall be required to serve as a backup bidder (the "***Backup Bidder***") for such Asset Package, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

(b) The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable, subject to the terms of any Stalking Horse Agreement, until the closing of the transaction with the applicable Successful Bidder; *provided* that nothing shall diminish the rights of a Stalking Horse Bidder under any Stalking Horse Agreement. The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder or as may otherwise be provided in any Stalking Horse Agreement.

(c) If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may, with the consent of the Majority First Lien Lenders, select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes, subject to the terms of any Stalking Horse Agreement. The

14

Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. Subject to the terms of any applicable Stalking Horse Agreement, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including specific performance.

**10.     Highest or Otherwise Best Bid**.

When determining the highest or otherwise best Bid for a given Asset Package, as compared to other Bids for such Asset Package, the Debtors may consider the Bid Assessment Criteria in addition to any other factors that the Debtors, and after consultation with the Majority First Lien Lenders, deem appropriate; *provided* that the fact a Bid, if any, is comprised of a credit bid shall not be a factor considered by the Debtors in their determination of the highest or otherwise best Bid.

**11.     Reservation of Rights**.

Subject to the rights of the Stalking Horse Bidders under the terms of their respective Stalking Horse Agreements, the Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, and with the consent of the Majority First Lien Lenders, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) cancelling the Auction; and (e) rejecting any or all bids or Bids; *provided, however*, that no such modification may alter, impair, or reduce the rights or protections of any Stalking Horse Bidder under these Bidding Procedures or under the applicable Stalking Horse Agreement.

**12.     Consent to Jurisdiction**.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of and entry of final orders by the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Qualified Bid Documents, as applicable.

**13.     Sale Hearing**.

A hearing to consider approval of each Sale of the Assets to the Successful Bidders (or to approve the Stalking Horse Agreement(s), as applicable, if no Auction is held) (the "***Sale Hearing***") is currently scheduled to take place at 10:00 a.m. (prevailing Eastern time) on July 18, 2018, or as soon thereafter as the Debtors may be heard, before the Honorable Kevin Gross, at the Court, 824 North Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801.

US-DOCS\101584951.3

The Sale Hearing may be continued to a later date by the Debtors, with the consent of the Majority First Lien Lenders, by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder).

At the Sale Hearing, the Debtors shall present the Successful Bids to the Court for approval.

## 14.    Stalking Horse Rights.

To provide an incentive and to compensate the Stalking Horse Bidders for performing the substantial due diligence and incurring the expenses necessary and entering into a Stalking Horse Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have, with the consent of the Majority First Lien Lenders, agreed to pay the respective Stalking Horse Bidders, under the conditions and in the amount set forth in the Bidding Procedures Order, (a) a break-up fee in the amount of:

- $1,350,000 for the North Dakota Package;

- $100,000 for the Wyoming Package;

- $600,000 for the North Louisiana Package; and

- $825,000 for the Trust Related Assets Package;

(each, a "**Break-Up Fee**"), payable pursuant to the terms of each Stalking Horse Agreement in the event that a Stalking Horse Agreement is terminated due to the Debtors entering into an alternative transaction or in other circumstances set forth in the applicable Stalking Horse Agreement, and (b) a reasonable expense reimbursement equal to:

- up to $450,000 for the North Dakota Package;

- up to $75,000 for the Wyoming Package;

- up to $200,000 for the North Louisiana Package; and

- up to $275,000 for the Trust Related Assets Package;

(each, an "**Expense Reimbursement**" and together with each applicable Breakup Fee, the "**Bid Protections**"), payable pursuant to the terms of each Stalking Horse Agreement in the event that a Stalking Horse Agreement is terminated due to the Debtors entering into an alternative transaction or in other circumstances set forth in the applicable Stalking Horse Agreement. The Bid Protections will be an allowed administrative expense priority claim in accordance with the terms of each Stalking Horse Agreement; *provided, however*, that such claim shall in no circumstances be *pari passu* with or senior to the claims granted to the First Lien Agent and/or the First Lien Lenders under any order of the Court granting such parties adequate protection, except that the Bid Protections shall be paid with first priority out of the proceeds of or as a precondition of the Successful Bid. In the event a Stalking Horse Bidder is not the Successful

16

Bidder, such Stalking Horse Bidder shall deliver to the Debtors any diligence reports prepared in connection with its Bid within two (2) business days following the conclusion of the Sale Hearing.

A Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, the Sale, and related matters, including the right to object to the sale of the Assets or any portion thereof (including the conduct of the Auction and interpretation of these Bidding Procedures).

**15.     No Modification of Bidding Procedures**.

Except as provided by Section 10 hereof, these Bidding Procedures may not be modified except with the express written consent of the Debtors and the Majority First Lien Lenders.

**16.     Return of Deposit; Remedies**.

The Deposit of the Successful Bidder shall be applied to the respective Purchase Price of such transaction at closing. Subject to the terms of any applicable Stalking Horse Agreement, the Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder, and the Backup Bidder) on or within three business days after the Auction. Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

Except as otherwise set forth in the Stalking Horse Agreement with respect to an applicable Stalking Horse Bidder, if a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court, *provided* that nothing herein shall prohibit any party from seeking an additional hearing or order of the Court.

Notwithstanding anything to the contrary contained herein, in the event of a conflict between the remedies set forth in these Bidding Procedures as they relate to a Stalking Horse Bidder, and the remedies set forth in the applicable Stalking Horse Agreement, the remedies set forth in the Stalking Horse Agreement will control.

**17.     Fiduciary Out**.

Nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of a Debtors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law; *provided* that in

the event of any such action, all rights and remedies of any Stalking Horse Bidder in these Bidding Procedures or any Stalking Horse Agreement shall be preserved.

## 18.     Contract Procedures

Within five (5) business days from the entry of the Bidding Procedures Order, the Debtors shall file and serve on all counterparties (the "***Counterparties***") to their executory contracts and unexpired leases (the "***Contracts***") a notice (the "***Cure Notice***") of (a) the potential assumption by the Debtors and assignment to the Successful Bidder(s) of the Contracts, and (b) the proposed amount necessary, under section 365(b)(1) of the Bankruptcy Code, to cure any outstanding monetary defaults and compensate the Counterparties for any pecuniary losses in connection with such assumption and assignment (the "***Proposed Cure Costs***").

If at any time after the issuance of the Cure Notice but prior to the Sale Hearing it is discovered that a Contract should have been listed on the Executory Contracts Schedule but was not (any such Contract, a "***Previously Omitted Contract***"), the Debtors shall, promptly following discovery thereof (but in no event later than five (5) Business Days following discovery thereof), file and serve a notice on the non-Debtor counterparty(ies) to such Previously Omitted Contract notifying such counterparties of the Debtors' intention to assume and assign such Previously Omitted Contract to the Successful Bidder, including the proposed Cure Costs relating thereto (the "***Previously Omitted Contract Notice***"); *provided however*, that the Debtors shall not serve Previously Omitted Contract Notices on applicable non-Debtor counterparty(ies) after July 5, 2018.

Each Counterparty shall have until the earlier to occur of (x) 5:00 p.m. (prevailing Eastern time) on the date that is fourteen (14) days after the filing and service by the Debtors to the Counterparty of the Cure Notice or the Previously Omitted Contract Notice (as applicable), and (y) the Sale Hearing (the "***Contract Objection Deadline***") to object to the assumption and assignment of its Contract on any grounds, including, without limitation, the amount of the Proposed Cure Costs, but excluding any objection as to adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code or on the basis of the identity of the Successful Bidder. Any such objection must be filed and served on the Debtors and their proposed co-counsel, the First Lien Agent and its counsel, and the applicable Stalking Horse Bidder (if any) and its counsel, so as to be actually received by the Contract Objection Deadline. Any unresolved such objections shall be heard at the Sale Hearing, unless otherwise agreed by the parties. If any objections to the amount of Proposed Cure Costs remain unresolved as of the date of the Closing of the Sale of any Asset Package, the Debtors may deposit the disputed amount of Proposed Cure Costs relating to such Asset Package in a segregated account to hold pending resolution of such objections.

Each Counterparty may raise objections as to adequate assurance of future performance or on the basis of the identity of the Successful Bidder until the earlier to occur of (x) 5:00 p.m. (prevailing Eastern time) on the date that is fourteen (14) days after the filing and service by the Debtors to the Counterparty of a notice identifying the applicable Successful Bidder, which, for the avoidance of doubt, may be provided with the Cure Notice or the Previously Omitted Contract Notice or at any time thereafter with respect to the Stalking Horse Bidders, and (y) the Sale Hearing (the "***Buyer Specific Objection Deadline***"). Any such objection must be filed and

US-DOCS\101584951.3

served on the Debtors and their proposed co-counsel, the First Lien Agent and its counsel, and the applicable Successful Bidder or Stalking Horse Bidder (if any), as applicable, and its counsel, so as to be actually received by the Buyer Specific Objection Deadline. Any unresolved such objections shall be heard at the Sale Hearing, unless otherwise agreed by the parties.

*[Remainder of page intentionally left blank.]*

US-DOCS\101584951.3

Dated: _____
      Wilmington, Delaware

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:       mnestor@ycst.com
               kcoyle@ycst.com

- and -

George A. Davis (pro hac vice pending)
Mitchell A. Seider (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022
Telephone:    (212) 906-1200
Facsimile:    (212) 751-4864
Email:       george.davis@lw.com
               mitchell.seider@lw.com

- and -

Caroline A. Reckler (*pro hac vice* pending)
Matthew L. Warren (*pro hac vice* pending)
Jason B. Gott (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:    (312) 876-7700
Facsimile:    (312) 993-9767
Email:       caroline.reckler@lw.com
               matthew.warren@lw.com
               jason.gott@lw.com

*Proposed Counsel for Debtors and Debtors in Possession*

US-DOCS\101584951.3