**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENDURO RESOURCE PARTNERS LLC, *et al.*, | ) Case No. 18-11174 (KG) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |
| | ) **Ref. Docket No. 310** |
| | ) |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING JOINT PLAN OF LIQUIDATION OF ENDURO RESOURCE PARTNERS LLC AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors-in-possession (collectively, the "***Debtors***")

having proposed the *Joint Plan of Liquidation of Enduro Resource Partners LLC and Its Debtor*

*Affiliates Under Chapter 11 of the Bankruptcy Code*, and as described herein (including all

exhibits and supplements thereto, and as modified or amended from time to time, the "***Plan***");[2]

the Bankruptcy Court having entered its *Order (A) Approving the Disclosure Statement,*

*(B) Establishing the Voting Record Date, Voting Deadline and Other Dates, (C) Approving*

*Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections*

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's United States federal tax identification number, if applicable, or other applicable identification number, are:  Enduro Resource Partners LLC (6288); Enduro Resource Holdings LLC (5571); Enduro Operating LLC (7513); Enduro Management Company LLC (5932); Washakie Midstream Services LLC (7562); and Washakie Pipeline Company LLC (7798).  The debtors' mailing address is 777 Main Street, Suite 800, Fort Worth, Texas 76102.

[2]    Unless otherwise specified, capitalized terms and phrases used herein have the meanings assigned to them in the Plan.  The rules of interpretation set forth in Section I.B of the Plan shall apply to these Findings of Fact, Conclusions of Law, and Order (this "***Confirmation Order***").  In addition, in accordance with Section I.B of the Plan, any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules (each as hereinafter defined), shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  A copy of the Plan is attached hereto as **Exhibit A** and incorporated herein by reference.

to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents dated June 18, 2018 [Docket No. 199] (the "**Disclosure Statement Order**"), by which the Bankruptcy Court, among other things, approved the Debtors' *Disclosure Statement for Joint Plan of Liquidation of Enduro Resource Partners LLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 203] (the "**Disclosure Statement**"), established procedures for the solicitation and tabulation of votes to accept or reject the Plan, scheduled a hearing on confirmation of the Plan and approved related notice procedures; Kurtzman Carson Consultants LLC ("**KCC**"), the Debtors' notice, claims and solicitation agent in respect of the Plan, having filed the *Certification of Andres A. Estrada With Respect to the Tabulation of Votes on the Joint Plan of Liquidation of Enduro Resource Partners LLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 313] (the "**Voting Report**") on July 25, 2018; the Bankruptcy Court having established in the Disclosure Statement Order July 30, 2018, at 10:00 a.m. (prevailing Eastern Time) as the date and time of the hearing pursuant to section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), to consider confirmation of the Plan (the "**Confirmation Hearing**"); the affidavit of service of the solicitation materials with respect to the Plan having been executed by KCC in accordance with the Disclosure Statement Order (the "**Affidavits of Service**") and having been filed with the Bankruptcy Court [Docket No. 248]; verification of publication of the notice of Confirmation Hearing (the "**Affidavits of Publication**") in the national edition of *The Wall Street Journal* [Docket No. 237] and in the *Fort-Worth Star-Telegram* [Docket No. 236] in accordance with the Disclosure Statement Order having been filed with the Bankruptcy Court on July 2, 2018; the Bankruptcy Court having reviewed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Voting Report, the Affidavit of Service, the Affidavit of Publication, and the other

01:23456537.4

papers before the Bankruptcy Court in connection with confirmation of the Plan; the Bankruptcy Court having heard the statements of counsel in support of and in opposition to confirmation at the Confirmation Hearing, as reflected in the record at the Confirmation Hearing; the Bankruptcy Court having considered all testimony presented and evidence admitted at the Confirmation Hearing; the Bankruptcy Court having taken judicial notice of the papers and pleadings on file in these Chapter 11 Cases; and the Bankruptcy Court finding that (i) notice of the Confirmation Hearing and the opportunity of any party in interest to object to Confirmation was adequate and appropriate, in accordance with Bankruptcy Rule 2002(b) and the Disclosure Statement Order, as to all parties to be affected by the Plan and the transactions contemplated thereby and (ii) the legal and factual bases set forth in the applicable papers and at the Confirmation Hearing, and as set forth in this Confirmation Order, establish just cause for the relief granted herein; the Bankruptcy Court hereby makes the following Findings of Fact, Conclusions of Law and Order:[3]

## I.  FINDINGS OF FACT.

### A.  JURISDICTION, CORE PROCEEDING, APPLICABLE LAW.

1.      The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code.

### B.  VENUE.

2.      On May 15, 2018 (the "***Petition Date***"), the Debtors commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11***

---

[3] This Confirmation Order constitutes the Bankruptcy Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

*Cases*").  Venue in the District of Delaware of the Chapter 11 Cases was proper as of the Petition

Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### C.    COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE.

#### 1.    Section 1129(a)(1) - Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.

3.    The Plan complies with all applicable provisions of the Bankruptcy Code, as

required by section 1129(a)(l) of the Bankruptcy Code, including sections 1122 and 1123 of the

Bankruptcy Code.

#### a.    Sections 1122 and 1123(a)(1)-(4) - Classification and Treatment of Claims and Interests.

4.    Pursuant to sections 1122(a) and 1123(a)(l) of the Bankruptcy Code, Article III of

the Plan designates Classes of Claims and Interests, other than for Administrative Claims,

Priority Tax Claims, and Other Priority Claims.[4]  As required by section 1122(a), each Class of

Claims and Interests contains only Claims or Interests that are substantially similar to the other

Claims or Interests within that Class.  The Plan contains seven Classes of Claims and Interests,

designated as Classes 1 through 7.  Such classification is proper under section 1122(a) of the

Bankruptcy Code, because such Class of Claims and Interests have differing rights among each

other and against the Debtors' assets or differing interests in the Debtors.  Pursuant to section

1123(a)(2) of the Bankruptcy Code, Article III of the Plan specifies all Classes of Claims and

Interests that are not Impaired under the Plan and specifies all Classes of Claims and Interests

that are Impaired under the Plan.  Pursuant to section 1123(a)(3) of the Bankruptcy Code, Article

---

[4]    Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Other Priority Claims are not required to be classified.  Articles II.A, II.B, and II.C of the Plan describe the treatment under the Plan of Administrative Claims, Priority Tax Claims, and Other Priority Claims, respectively.

III of the Plan specifies the treatment of all Claims and Interests under the Plan. Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan also provides the same treatment for each Claim or Interest within a particular Class, unless the holder of a Claim or Interest agrees to less favorable treatment of its Claim or Interest. The Plan therefore complies with sections 1122 and 1123(a)(1)-(4) of the Bankruptcy Code.

> **b.** **Section 1123(a)(5) - Adequate Means for Implementation of the Plan.**

5.      Article V and various other provisions of the Plan provide adequate means for the Plan's implementation. Those provisions relate to, among other things: (i) the establishment of a Plan Administration Trust for the purpose of winding down the Debtors' remaining Assets  and distributing the proceeds as prescribed by the Plan; (ii) the ability, following confirmation and prior to the Effective Date, of the then-current officers and directors of each of the Debtors to execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan; and (iii) the transfer and assignment, on the Effective Date, of the Debtors' remaining Assets to the Plan Administration Trust free and clear of all Liens, Claims, and Interests, except as otherwise specifically provided in the Plan or herein. The Plan therefore complies with section 1123(a)(5) of the Bankruptcy Code.

> **c.** **Section 1123(a)(6) - Prohibition Against the Issuance of Nonvoting Equity Securities and Adequate Provisions for Voting Power of Classes of Securities.**

6.      Section 1123(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases because the Plan contemplates (i) the transfer of all of the Debtors' assets to the Plan Administration Trust, (ii) the dissolution of the Debtors' corporate existences as soon as practicable after the Effective Date, and (iii) the issuance of no new securities.

      **d.**     **Section 1123(a)(7) - Selection of Directors and Officers in a Manner Consistent with the Interest of Creditors and Equity Security Holders and Public Policy.**

7.     After the Effective Date, pursuant to section 1124(b) of the Bankruptcy Code, the Plan Administrator shall be authorized to file each Debtor's tax returns. Following Confirmation and prior to the occurrence of the Effective Date, the then-current officers and directors of each of the Debtors shall continue in their respective capacities and the Debtors shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan. On and after the Effective Date, all such officers and directors shall be terminated and shall be deemed to have resigned. The Plan Administrator has ample liquidation experience and was selected with the support of the Debtors' key constituents. The Plan therefore complies with section 1123(a)(7) of the Bankruptcy Code, as appropriate for a liquidating plan, in a manner consistent with the interests of creditors and equity security holders and public policy.

      **e.**     **Section 1123(b)(1)-(2) - Impairment of Claims and Interests and Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases.**

8.     In accordance with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests. In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan provides for the rejection of all executory contracts and unexpired leases of the Debtors as of the Effective Date, except for those executory contracts and unexpired leases that (i) have been previously rejected, assumed, or assumed and assigned, including in connection with any Sale, or (ii) have expired under their own terms prior to the Effective Date. The Plan is therefore consistent with section 1123(b)(1)-(2) of the Bankruptcy Code.

01:23456537.4

**f.** **Section 1123(b)(3) - Retention, Enforcement and Settlement of Claims held by the Debtors.**

9.     Pursuant to section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Plan or this Confirmation Order, after transfer of the Assets to the Plan Administration Trust pursuant to Section V.D of the Plan, the Plan Administrator (and to the extent retained by the Plan Administration Trust to perform such work, any other Person) will have the exclusive rights, powers, and interests of the Estates to pursue, settle, or abandon all Retained Causes of Action as the sole representative of the estates.

10.     Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, from and after the Effective Date of the Plan, only the Plan Administrator shall be entitled to object to Claims, other than First Lien Claims. Any objections to Administrative Claims shall be filed and served on the claimant by the date that is six (6) months after the Effective Date, which date may be extended by the Plan Administrator with the approval of the Bankruptcy Court. Any objections to any Claim other than an Administrative Claim shall be Filed and served on the claimant no later than the later of (x) sixty (60) days after the date the Claim is Filed, (y) sixty (60) days after the Effective Date or such other date as may be ordered from time to time by the Bankruptcy Court and (z) such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, which later date may be fixed before or after the dates specified in clause (x) and (y) above. No other deadlines by which objections to Claims must be Filed have been established in these Chapter 11 Cases. In light of the foregoing, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

**g.** **Section 1123(b)(4) – Sale of All or Substantially All of the Property of the Estate.**

11.     Consistent with section 1123(b)(4) of the Bankruptcy Code, the Plan effectuates the distribution of the proceeds of the sale of all or substantially all assets of the Estates under the

01:23456537.4

Plan or previous sale orders of the Bankruptcy Court. The Plan is therefore consistent with section 1123(b)(4) of the Bankruptcy Code.

> **h.    Section 1123(b)(5) - Modification of the Rights of Holders of Claims.**

12.    Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of each Class of Claims, and therefore, the Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.

> **i.    Section 1123(b)(6) - Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code.**

13.    The Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including: (i) the provisions of Article V of the Plan regarding the means for executing and implementing the Plan; (ii) the provisions of Article VI of the Plan governing the treatment of executory contracts and unexpired leases; (iii) the provisions of Article VII of the Plan governing distributions on account of Allowed Claims, particularly as to the timing and calculation of amounts to be distributed; (iv) the provisions of Article X.E of the Plan regarding the injunction with respect to claims and interests treated under the Plan; (v) the provisions of Articles X.B and X.C of the Plan regarding the releases with respect to the Released Parties; and (vi) the provisions of Article XII of the Plan regarding retention of jurisdiction by the Bankruptcy Court over certain matters after the Effective Date. The Plan is therefore consistent with section 1123(b)(6) of the Bankruptcy Code.

> **2.    Section 1129(a)(2) - Compliance with Applicable Provisions of the Bankruptcy Code.**

14.    The Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018. The Disclosure Statement and the

procedures by which the ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and the Disclosure Statement Order. Consistent with Article X.D of the Plan, the Debtors and their respective members, officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents, as applicable, have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code. The Plan therefore complies with section 1129(a)(2) of the Bankruptcy Code.

### 3.    Section 1129(a)(3) - Proposal of the Plan in Good Faith.

15.    The Debtors proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based on the Disclosure Statement and the evidence presented at the Confirmation Hearing, the Bankruptcy Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of liquidating the Debtors' estates and maximizing the returns available to creditors of the Debtors. Moreover, the Plan itself and the arms' length negotiations among the Debtors, the Key Constituencies, and the Debtors' other constituencies leading to the Plan's formulation, as well as the overwhelming support of creditors for the Plan, provide independent evidence of the Debtors' good faith in proposing the Plan.

### 4.    Section 1129(a)(4) - Bankruptcy Court Approval of Certain Payments as Reasonable.

16.    Article II.A.2 of the Plan provides that, on or immediately prior to the Effective Date, the Debtors shall pay all amounts owing to the Professionals for all unpaid Fee Claims relating to prior periods and for the period ending on the Effective Date. The Professionals shall

estimate Professional Claims due for periods that have not been billed as of the Effective Date. On or prior to forty-five (45) days after the Effective Date, each Professional shall File with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date; *provided* that the Debtors may pay retained Professionals or other Entities in the ordinary course of business after the Effective Date. Within ten (10) days after entry of a Final Order with respect to its final fee application, each Professional shall remit any overpayment amount to the Debtors and the Debtors shall pay any unpaid amounts to each Professional. For the avoidance of doubt, any such payments made on the Effective Date shall be held by each Professional and not applied against any Fee Claims until such time as such Professional's Fee Claims are Allowed.

17.    The Bankruptcy Court will review the reasonableness of the final fee applications under sections 328 and 330 of the Bankruptcy Code and any applicable case law. The Bankruptcy Court has authorized periodic payment of the fees and expenses of Professionals incurred in connection with these Chapter 11 Cases. All such fees and expenses, however, remain subject to final review for reasonableness by the Bankruptcy Court. Thus, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

**5.    Section 1129(a)(5) - Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.**

18.    Article V.D of the Plan provides that, on the Effective Date, the Plan Administrator shall sign the Plan Administration Trust Agreement. The initial Plan Administrator shall be Eric Danner. The appointment of the Plan Administrator is consistent with the interests of holders of Claims and Interests and with public policy. The Plan therefore complies with section 1129(a)(5) of the Bankruptcy Code.

01:23456537.4

6.     **Section 1129(a)(6) - Approval of Rate Changes.**

19.     After the Confirmation Date, the Debtors will not have any businesses involving the establishment of rates over which any regulatory commission has or will have jurisdiction. Therefore, the provisions of section 1129(a)(6) do not apply to the Plan.

7.     **Section 1129(a)(7) - Best Interests of Holders of Claims and Interests.**

20.     With respect to each Impaired Class of Claims or Interests of the Debtors, each holder of a Claim or Interest in such Impaired Class has either (i) accepted or is deemed to have accepted the Plan or (ii) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code on an individual or consolidated basis.  The Plan therefore complies with section 1129(a)(7) of the Bankruptcy Code.

8.     **Section 1129(a)(8) - Acceptance of Plan by Impaired Class.**

21.     Pursuant to sections 1124 and 1126 of the Bankruptcy Code: (a) as indicated in Article III.C of the Plan, Class 1 is not Impaired by the Plan and is deemed to have accepted the Plan; and (b) as indicated in the Voting Report, the requisite number and amount of creditors and claims in each of Class 2, Class 3 and Class 4, as required by section 1126(c) of the Bankruptcy Code, voted to accept the Plan.

22.     Because the holders of Claims and Interests in Classes 5, 6, and 7 will not receive or retain any property on account of such Claims or Interests, Classes 5, 6, and 7 are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Notwithstanding the lack of compliance with section 1129(a)(8) of the Bankruptcy Code with respect to Classes 5, 6, and 7, the Plan is confirmable because, as described below, the Plan satisfies the "cramdown" requirements of section 1129(b) of the Bankruptcy Code with respect to such Classes.

Therefore, although the Plan does not meet the requirements of section 1129(a)(8) of the Bankruptcy Code with respect to such Classes, it can be confirmed under the provisions of section 1129(b) of the Bankruptcy Code.

### 9.    Section 1129(a)(9) - Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.

23.    Article II of the Plan provides for treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims, subject to certain bar date provisions consistent with Bankruptcy Rules 3002 and 3003, in the manner required by section 1129(a)(9) of the Bankruptcy Code.

24.    Pursuant to Article II.A.1 of the Plan, except with respect to Administrative Claims that are Fee Claims and except to the extent that a Holder of an Allowed Administrative Claim and the applicable Debtors agree to less favorable treatment for such Holder's Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the latest of: (i) the Effective Date; (ii) the date such Administrative Claim is Allowed; and (iii) the date such Allowed Administrative Claim becomes due and payable.

25.    Under Article II.B of the Plan, except to the extent that a Holder of an Allowed Priority Tax Claim and the applicable Debtors agree to less favorable treatment for such Holder's Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will be paid in full in Cash from the Claims Reserve Account on the latest of: (i) the Effective Date; (ii) the date such Priority Tax Claim is Allowed; and (iii) the date such Allowed Priority Tax Claim becomes due and payable.

26.    Pursuant to Article II.C of the Plan, each Holder of an Allowed Other Priority Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtors, one of the following treatments: (i) Cash from the Claims Reserve

01:23456537.4

Account in an amount equal to the amount of such Allowed Other Priority Claim or (ii) such other treatment as may be agreed upon by such Holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court.

27.    In light of the foregoing, the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

> **10.    Section 1129(a)(10) - Acceptance by at Least One Impaired Non-Insider Class.**

28.    As indicated in the Voting Report and as reflected in the record of the Confirmation Hearing, at least one non-insider Class of Claims or Interests that is Impaired under the Plan has voted to accept the Plan. Each of Class 2, Class 3, and Class 4 is Impaired and has voted to accept the Plan. The Plan therefore complies with section 1129(a)(10) of the Bankruptcy Code.

> **11.    Section 1129(a)(11) Feasibility of the Plan.**

29.    Based on the testimony at the Confirmation Hearing regarding the value of the Debtors' Assets, the Plan sets forth means of payment of the Debtors' obligations under the Plan in accordance with the Bankruptcy Code and the Bankruptcy Rules and is feasible. Because the Plan and the Plan Administration Trust Agreement provide for the liquidation of all of the Debtors' remaining assets, confirmation cannot be followed by any liquidation in addition to that prescribed by the Plan or the Plan Administration Trust Agreement, nor would confirmation be followed by the need for further financial reorganization. Moreover, the Debtors' calculations of the Other Secured Claims Reserve Amount and the Priority Claims Reserve Amount are reasonable and not likely to result in the Debtors' or the Plan Administration Trust's inability to make distributions to Holders of Other Secured Claims and Priority Claims as contemplated by the Plan. The Plan therefore complies with section 1129(a)(11) of the Bankruptcy Code.

### 12.    Section 1129(a)(12) - Payment of Bankruptcy Fees.

30.    Notwithstanding anything in the Plan to the contrary, on or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930, shall be paid in full, in Cash.  The Plan therefore complies with section 1129(a)(12) of the Bankruptcy Code.

### 13.    Section 1129(a)(13) – (16) of the Bankruptcy Code are Inapplicable.

31.    The Debtors are not (i) obligated to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code), (ii) required to pay any domestic support obligations, (iii) individuals, or (iv) nonprofit corporations or trusts.  Accordingly, sections 1129(a)(13) through (16) of the Bankruptcy Code are not applicable.

### 14.    Section 1129(b) - Confirmation of the Plan Over the Non-Acceptance of Impaired Classes.

32.    Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that Claims and Interests in Classes 5, 6, and 7 are Impaired and are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code. Nonetheless, the Plan meets the "cramdown" requirements for confirmation under section 1129(b) of the Bankruptcy Code.  Other than the requirement in section 1129(a)(8) of the Bankruptcy Code with respect to Classes 5, 6, and 7, all of the requirements of section 1129(a) of the Bankruptcy Code have been met.  The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 5, 6, and 7.  No holders of Claims and Interests junior to the Claims and Interests in Classes 5, 6, and 7 will receive or retain any property on account of their Claims and Interests, and no holders of Claims or Interests senior to the Claims and Interests in Classes 5, 6, and 7 are receiving more than full payment on account of the Claims and Interests in such Classes. The Plan therefore is fair and equitable and does not discriminate unfairly with respect to any of these Classes, and complies with section 1129(b) of the Bankruptcy Code.

01:23456537.4

### 15.    Section 1129(d) - Purpose of Plan.

33.    The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and there has been no objection filed by any governmental unit asserting such avoidance. The Plan therefore complies with section 1129(d) of the Bankruptcy Code.

### 16.    Modifications to the Plan.

34.    The modifications made to the Plan since the commencement of solicitation of votes thereon, including to the extent the terms of this Confirmation Order may be construed to constitute modifications to the Plan (collectively, the "*Plan Modifications*"), do not individually or in the aggregate materially or adversely affect or change the treatment of any Claim against or Interest in any Debtor. Accordingly, pursuant to Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the solicitation of acceptances or rejections under section 1126 of the Bankruptcy Code. Disclosure of the Plan Modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these Chapter 11 Cases. All references to the Plan in this Confirmation Order shall be to the Plan as so modified.

### 17.    Good Faith Participation.

35.    Based upon the record before the Bankruptcy Court, the Debtors, the Consenting First Lien Lenders, the First Lien Agent, the Consenting Second Lien Lenders, and their respective members, officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Chapter 11 Cases, and the negotiation and pursuit of confirmation of the Plan. Therefore,

01:23456537.4

they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent set forth in this Confirmation Order, the exculpatory and injunctive provisions set forth in Article X of the Plan.

## II.   CONCLUSIONS OF LAW.

### A.   JURISDICTION AND VENUE.

36.    The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code.  Venue of the Chapter 11 Cases in the United States District Court for the District of Delaware was proper as of the Petition Date, pursuant to 28 U.S.C. §§ 1408 and 1409, and continues to be proper.

### B.   COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE.

37.    As set forth above, the Plan complies in all respects with the applicable requirements of section 1129 of the Bankruptcy Code.

### C.   APPROVAL OF COMPROMISES, EXCULPATION, AND RELEASES PROVIDED UNDER THE PLAN.

38.    The settlements and compromises set forth in the Plan, as amended herein, (i) are approved as integral parts of the Plan; (ii) are fair, equitable, reasonable, and in the best interests of the Debtors and their respective Estates and the holders of Claims and Interests; (iii) are approved as fair, equitable, and reasonable, pursuant to, among other authorities, section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), to the extent applicable; and (iv) are effective and binding in accordance with their terms.

39.    Except as specifically set forth in this Confirmation Order, those exculpations, releases, waivers, and injunctions that are specifically set forth in the Plan, including in Article X of the Plan, (i) are approved as integral parts of the Plan; (ii) are fair, equitable, reasonable and in

the best interests of the Debtors and their respective Estates and the holders of Claims and Interests; (iii) are approved as fair, equitable and reasonable; and (iv) are effective and binding in accordance with their terms.

40.     In approving the exculpations, releases, and injunctions as described above, the Bankruptcy Court has considered, among other things, the various factors set forth in *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110–11 (Bankr. D. Del. 1999).

### D.     AGREEMENTS AND OTHER DOCUMENTS.

41.     The Debtors have disclosed all material facts relating to the various contracts, instruments, releases, indentures and other agreements or documents to be entered into, executed and delivered, adopted or amended by them in connection with the Plan, including, without limitation, the Plan Administration Trust Agreement (collectively, the "***Plan Documents***").  No action of the Debtors' members or board of directors, as applicable, or the Plan Administrator will be required to authorize the Debtors to enter into, execute and deliver, adopt or amend, as the case may be, the Plan Documents, and following the Effective Date, each of the Plan Documents will be a legal, valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with the respective terms thereof.  Each of the Plan Documents is hereby approved and also shall be enforceable against the Plan Administration Trust and the Plan Administrator from and after the Effective Date.

### E.     REJECTIONS OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

42.     Each rejection of an executory contract or unexpired lease pursuant to Article VI of the Plan shall be legal, valid and binding upon the applicable Debtor and all non-debtor parties to such executory contract or unexpired lease, all to the same extent as if such rejection had been

01:23456537.4

effectuated pursuant to an appropriate authorizing order of the Bankruptcy Court entered prior to the Confirmation Date under section 365 of the Bankruptcy Code.

## III.    ORDER.

ACCORDINGLY, THE BANKRUPTCY COURT HEREBY ORDERS THAT:

### A.    CONFIRMATION OF THE PLAN.

43.    The Plan, a copy of which is attached hereto as **Exhibit A**, along with each of its provisions (whether or not specifically approved herein) and all operative exhibits and schedules thereto, is confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits and schedules thereto are incorporated by reference into this Confirmation Order, and the provisions of the Plan and this Confirmation Order are non-severable and mutually dependent.  Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  All objections and other responses to, and statements and comments regarding, the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing are either (i) resolved or sustained on the terms set forth herein or (ii) overruled.

44.    The failure specifically to identify or refer to any particular provision of the Plan, the Plan Administration Trust Agreement, or any other agreement approved by this Confirmation Order in this Confirmation Order shall not diminish or impair the effectiveness of such

01:23456537.4

provision, it being the intent of the Bankruptcy Court that the Plan, the Plan Administration Trust Agreement, and all other agreements approved by this Confirmation Order are approved in their entirety.

### B. EFFECTS OF CONFIRMATION.

#### 1. Binding Nature of Plan Terms.

45. Notwithstanding any otherwise applicable law, from and after the entry of this Confirmation Order, the terms of the Plan and this Confirmation Order shall be deemed binding upon (i) the Debtors, (ii) any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), (iii) any and all non-debtor parties to executory contracts and unexpired leases with any of the Debtors, and the compromises, releases, waivers, discharges and injunctions described in Section II.C above, and (iv) the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

#### 2. Final Tax Returns; Officers and Directors.

46. After the Effective Date, pursuant to section 1124(b) of the Bankruptcy Code, the Plan Administrator shall be authorized to file each Debtor's tax returns. From and after the Effective Date, the Debtors (i) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal, (ii) shall be deemed to have cancelled pursuant to the Plan all Interests and all Intercompany Claims, and (iii) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

01:23456537.4

### 3. The Plan Administration Trust.

47.     On the Effective Date, the Debtors shall execute the Plan Administration Trust Agreement and take all steps necessary to establish the Plan Administration Trust.

48.     On the Effective Date, each of the Debtors shall transfer and assign all of its Assets to the Plan Administration Trust, and such Assets shall vest in the Plan Administration Trust free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or herein; *provided* that the Assets transferred to the Plan Administration Trust shall remain subject to the Liens securing the First Lien Claims as proceeds of Collateral (as defined in the First Lien Credit Documents); *provided further*, that all distributions from the Plan Administration Trust in accordance with the Plan and the Plan Administration Trust Agreement shall be free and clear of such Liens.

49.     For all purposes under the Plan and the Plan Documents, and subject to the terms of the Plan Administration Trust Agreement, the Plan Administration Trust shall act through the Plan Administrator.

### 4. Approval of Executory Contract and Unexpired Lease Provisions and Related Procedures.

50.     The executory contract and unexpired lease provisions of Article VI of the Plan are specifically approved.  Any executory contracts and unexpired leases of the Debtors not assumed and assigned to a Purchaser or rejected prior to the Effective Date or with respect to which the Debtors have not Filed a Notice of Assumption and Assignment prior to the Effective Date (the "***Remaining Contracts***") shall be rejected pursuant to Article VI.A of the Plan.

51.     Except as otherwise expressly set forth herein, all objections, if any, relating to the rejection of Remaining Contracts are overruled.  Notice of the time fixed for filing objections

01:23456537.4

to such rejection was adequate, pursuant to the terms of the Disclosure Statement Order and in accordance with the precepts of due process.

52.    Except for those executory contracts and unexpired leases that (i) have been previously assumed, assumed and assigned or rejected pursuant to previous orders of the Bankruptcy Court, irrespective of whether such assumption or rejection has yet to occur on the Effective Date, or (ii) are the subject of a pending motion before the Bankruptcy Court with respect to the assumption or assumption and assignment of such executory contracts and unexpired leases as of the Effective Date, all executory contracts and unexpired leases of the Debtors shall be rejected pursuant to section 365 of the Bankruptcy Code; *provided, however*, that nothing contained in Article VI of the Plan shall constitute an admission by any Debtor that such contract or lease is an executory contract or unexpired lease or that any Debtor or its successors and assigns, including, but not limited to, the Plan Administration Trust, has any liability thereunder.

### 5.    Prosecution of Causes of Action by the Plan Administration Trust.

53.    On the Confirmation Date, the Plan Administrator, as the legal representative of the Plan Administration Trust, shall be authorized without further order to pursue and liquidate all Causes of Action and, in connection therewith shall be deemed substituted as the plaintiff and a party in interest in the place and stead of the Debtors pursuant to rule 25 of the Federal Rules of Civil Procedure and Bankruptcy Rules 7025 and 9014, in any and all actions, proceedings, contested matters, applications and motions.

### C.    CLAIMS, BAR DATES AND OTHER CLAIMS MATTERS.

### 1.    Bar Date for Fee Claims

54.    On or prior to forty-five (45) days after the Effective Date, each Professional shall File with the Bankruptcy Court its final fee application seeking final approval of all fees and

01:23456537.4

expenses from the Petition Date through the Effective Date; *provided* that the Plan Administration Trust may pay retained Professionals or other Entities in the ordinary course of business after the Effective Date.  Objections to any Fee Claim must be Filed and served on the Debtors and the requesting party no later than twenty (20) days after such Fee Claim is Filed with the Bankruptcy Court.  To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.  Within ten (10) days after entry of a Final Order with respect to its final fee application, each Professional shall remit any overpayment to the Debtors and the Debtors shall pay any unpaid amounts to each Professional.

55.     Any Holder of a Fee Claim that is required to File a request for payment or proof of such Claims and that do not File such requests or proofs of Claim on or prior to forty-five (45) days after the Effective Date shall be forever barred from asserting such Claims against the any of the Debtors, their Estates, or the Plan Administration Trust.

### 2.     Bar Date for Administrative Claims

56.     Other than with respect to (i) Administrative Claims for which the Bankruptcy Court previously has established a Bar Date and (ii) Fee Claims addressed in Section III.C.1 above, any and all requests for payment or proofs of Administrative Claims must be Filed and served on the Plan Administrator and its counsel no later than thirty (30) days after the Effective Date (the "***Administrative Claims Bar Date***"), which date may be extended by application to the Bankruptcy Court.  The Plan Administrator shall use reasonable efforts to promptly and diligently pursue resolution of any and all Disputed Administrative Claims.

57.     Any Holder of an Administrative Claim that is required to File a request for payment or proof of such Claims and that do not File such requests or proofs of Claim on or

before the Administrative Claims Bar Date shall be forever barred from asserting such Claims against the any of the Debtors, their Estates, or the Plan Administration Trust.

### 3. Bar Date for Rejection Damages Claims and Related Procedures.

58.     All Claims arising from the rejection of Executory Contracts or Unexpired Leases must be Filed with the clerk of the Bankruptcy Court and served upon the Plan Administrator and counsel for the Debtors within thirty (30) days of the occurrence of the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 3 General Unsecured Claim.

### D. ACTIONS IN FURTHERANCE OF THE PLAN.

59.     The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors prior to the Effective Date and the Plan Administrator on and after the Effective Date to take any and all actions necessary or appropriate to implement, effectuate and consummate, among other things, the Plan, the Plan Administration Trust Agreement, this Confirmation Order or the transactions contemplated thereby or hereby.  In addition to the authority to execute and deliver, adopt or amend, as the case may be, the contracts, instruments, releases and other agreements specifically granted and approved in this Confirmation Order, the Debtors prior to the Effective Date and the Plan Administrator on and after the Effective Date are authorized and empowered, without further action in the Bankruptcy Court, to take any and all such actions as they may determine are necessary or appropriate to implement, effectuate and consummate, among other things, the Plan, the Plan Administration Trust Agreement, this Confirmation Order, or the transactions contemplated thereby or hereby.  Pursuant to section 1142 of the Bankruptcy Code, no action of the Debtors' or the Plan Administrator shall be required for any Debtor to enter into, execute and deliver, adopt or amend, as the case may be, any of the contracts, instruments, releases and other

01:23456537.4

agreements or documents and plans to be entered into, executed and delivered, adopted or amended in connection with the Plan and, following the Effective Date, each of such contracts, instruments, releases, and other agreements shall be a legal, valid, and binding obligation of the applicable Debtor, enforceable against such Debtor and its successors (including the Plan Administration Trust) in accordance with its terms subject only to bankruptcy, insolvency and other similar laws affecting creditors' rights generally and to general equitable principles. The Debtors prior to the Effective Date and the Plan Administrator on and after the Effective Date are authorized to execute, deliver, file or record such contracts, instruments, financing statements, releases mortgages, deeds, assignments, leases, applications, registration statements, reports or other agreements or documents and take such other actions as they may determine are necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, this Confirmation Order and the transactions contemplated thereby or hereby, all without further application to or order of the Bankruptcy Court and whether or not such actions or documents are specifically referred to in the Plan, the Disclosure Statement, the Disclosure Statement Order, this Confirmation Order or the exhibits to any of the foregoing. The signature of any officer of any Debtor prior to or on the Effective Date and the Plan Administrator or his designee after the Effective Date on a document executed in accordance with this Confirmation Order shall be conclusive evidence of such Person's determination that such document and any related actions are necessary and appropriate to effectuate and/or further evidence the terms and conditions of the Plan, this Confirmation Order or the transactions contemplated thereby or hereby. Any officer of any Debtor prior to the Effective Date and the Plan Administrator or his designee on or after the Effective Date are authorized to certify or attest to any of the foregoing actions. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable

nonbankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders or directors of any of the Debtors, this Confirmation Order shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors and stockholders of the appropriate Debtor.

### E.    RESOLUTION OF CERTAIN FORMAL AND INFORMAL OBJECTIONS TO CONFIRMATION.

60.    Formal and informal objections to Confirmation are hereby resolved on the terms and subject to the conditions set forth below.  The compromises and settlements contemplated by the resolution of such objections are fair, equitable and reasonable, are in the best interests of the Debtors, their respective Estates and creditors and are expressly approved pursuant to Bankruptcy Rule 9019.

61.    Notwithstanding any language to the contrary contained in the Plan and/or this Confirmation Order, no provision of the Plan or this Confirmation Order shall (i) preclude the United States Securities and Exchange Commission ("*SEC*") from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

62.    Notwithstanding any provision in the Confirmation Order, Plan and Plan Documents to the contrary, no provision in the Confirmation Order, Plan and/or Plan Documents shall release any claims, perfected liens or other rights or interests of U.S. Specialty Insurance Company (the "*Surety*") with respect to any of the Surety's collateral (including, but not limited to, any prepetition or post-petition letter(s) of credit or cash collateral), whether pursuant to agreement(s), applicable law or otherwise, or any rights to set-off, recoupment or the right to amend any claim.  In addition, no provision in the Confirmation Order, Plan and/or Plan

Documents shall serve as a release by Surety of any claims against the Released Parties. Further, to the extent that Surety pays any claim of any obligee or beneficiary of a bond issued by the Surety on behalf of the Debtors, and the Surety subrogates to the rights of such obligee or beneficiary, the Surety's subrogation claim shall not be disallowed or affected pursuant to any provision of the Confirmation Order, Plan and/or Plan Documents, and all of the claims, perfected liens, rights and perfected security interests, if any, including any set-off or recoupment rights of any party to which Surety is or may in the future be subrogated, shall survive with equal force as the liens, rights and/or claims of Surety referenced above. Nothing in any provision in the Confirmation Order, Plan and/or Plan Document shall create any obligation for Surety to (a) satisfy any claim of Surety, or any claim against the Debtor to which Surety is subrogated, from Surety's collateral or the proceeds thereof, if any (including, but not limited to, any prepetition or post-petition letter(s) of credit or cash collateral), or (b) repay or return Surety's collateral; *provided, however*, Surety's obligation to return any excess proceeds from collateral after application of such collateral pursuant to the Indemnity or Collateral Agreements shall survive the effective date of the Plan Documents; *provided, further*, that the Debtors' rights in connection with such obligation shall be assigned to the Plan Administration Trust after the Effective Date in accordance with the Plan.

63.    Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, or any Plan Documents, nothing shall: (1) cause the United States to be a "Releasing Party" under the Plan or affect the ability of the United States to assert or enforce any claim, interest or cause of action against any non-debtor to the extent allowed by non-bankruptcy law; (2) affect the rights, if any, of the United States to assert setoff and recoupment and such rights, as well as all rights and defenses of the Debtors or Plan Administration Trust thereto, are

01:23456537.4

expressly preserved; (3) be construed as a compromise or settlement of any claim, interest or cause of action of the United States; or (4) deem any distribution to the United States to on account of a Disputed Claim to be made on the Effective Date if such distribution was not actually made on the Effective Date or affect any entitlement under the Bankruptcy Code of the United States to the payment of interest on its Allowed Claims. The United States shall have until November 12, 2018, to submit any Administrative Claims unless the United States is otherwise entitled to more time to submit such claims pursuant to the Bankruptcy Code or the Plan. Moreover, nothing in the Plan, this Confirmation Order, or any Plan Documents shall affect the treatment of any interest in contracts, leases, covenants, operating rights agreements, rights-of-use and easement, and rights-of-way or other interests or agreements with the federal government or involving federal land or minerals (collectively, the "*Federal Lease(s)*") as set forth in the Sale Orders. For the avoidance of doubt and without limiting the foregoing, the Sale Orders provide that notwithstanding any provision in the Sale Motion, the Sale Orders or implementing Sale documents (collectively, "*Sale Documents*"), any sale, assumption, assignment and/or transfer of any interests in the Federal Leases will be ineffective absent the consent of the United States and both Debtors and the Purchaser agree to comply with all applicable non-bankruptcy law with respect to the Federal Leases. Nothing in the Sale Documents shall otherwise affect any decommissioning obligations and financial assurance requirements under the Federal Leases, as determined by the United States (as provided for under applicable non-bankruptcy law and the Federal Leases) that must be met by the Debtors and/or the Purchaser, as applicable. Any liability for post-closing plugging and abandonment or other decommissioning obligations related to the Federal Leases shall be assumed by the Purchaser (or its successors and assigns) and the Purchaser shall be liable for such obligations, in

01:23456537.4

each case with respect to the Federal Leases or otherwise. Moreover, nothing in the Sale Documents shall be interpreted to require the United States to novate, approve or consent to the assumption, sale, assignment and/or transfer of any interests in the Federal Leases. For the avoidance of doubt, in order to obtain the consent of the United States to the assumption, sale, assignment and/or transfer of any interests in a Federal Lease, all existing defaults under such Federal Lease, including, without limitation, any outstanding rents or royalties known and satisfactorily documented to date, plus any accrued and unpaid interest lawfully chargeable must be paid (i.e., assumed and/or cured, to the extent appropriate), and nothing in the Sale Documents shall be interpreted to set cure costs for the Federal Leases. Further, nothing in the Sale Documents shall affect the United States' police and regulatory powers or prohibit or limit the United States' right to draw on any surety bond issued to support the Debtors' obligations under the Federal Leases, and all parties, including the Debtors and the Purchaser, reserve and preserve all rights and defenses thereto with respect to such bonds, and the United States' rights to offset or recoup any amounts due under, or relating to any Federal Leases (if any) are expressly preserved, as are the Debtors' defenses and rights thereto. Without limiting the foregoing, with respect to Department of Interior ("**DOI**") Federal Leases, the DOI will retain, and have, the right to audit and/or perform any compliance review, and if appropriate, receive payment of any additional monies owed by the Debtors prior to the sale, assumption, assignment and/or transfer of the Federal Lease(s) without those rights being adversely affected by these bankruptcy proceedings. For the avoidance of doubt, pending Audit Case No. 1500684 shall be preserved and continue in an administrative proceeding until a final determination has been made by the DOI. The Debtors and the Purchaser will retain all defenses and/or rights, other than defenses and/or rights arising from the bankruptcy, to challenge any such determination:

provided, however, that any such challenge, including any challenge associated with this bankruptcy proceeding, must be raised in the United States' administrative review process leading to a final agency determination by the DOI. The audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (30 U.S.C. Section 1701, et seq.) to the extent applicable to the Federal Leases under non-bankruptcy law. The Purchasers acknowledge that, as between the Purchasers and the DOI, it must accept, as a condition to obtain DOI's consent in accordance with applicable non-bankruptcy law (including, without limitation, 25 C.F.R. Section 1.53(c)), all responsibilities and prior obligations and liabilities of the Debtors (including but not limited to any underpaid royalties and rentals) with respect to any Federal Leases.

64.    Notwithstanding any provision in the Confirmation Order, Plan, and Plan Documents to the contrary, KLX Energy Service LLC shall not be a "Releasing Party" under the Plan.

65.    Payment of the United States Trustee Quarterly Fees. All fees due and payable pursuant to section 1930 of Title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors on the Effective Date. On and after the Effective Date, the Plan Administrator shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee; provided, however, that nothing contained in this sentence shall obligate the Plan Administrator to prepare or file any reports other than those reports required by Article V.I of the Plan.

F.    **EXCULPATION, INJUNCTION, AND RELEASES.**

1.    **Exculpation.**

66.    To the fullest extent permitted by applicable law, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is

01:23456537.4

hereby released and exculpated from any Exculpated Claim, obligation, Cause of Action or liability for any Exculpated Claim, except for those that are determined in a final order to have constituted actual fraud, gross negligence, willful misconduct, or criminal conduct.

### 2.    Injunction.

67.    Except as otherwise expressly provided in the Plan or related documents, or for obligations issued pursuant to the Plan, from and after the Effective Date, all Releasing Parties are permanently enjoined from taking any of the following actions against any Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, or subrogation against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Nothing in the Plan or this Confirmation Order shall preclude any Entity from pursuing an action against one or more of the Debtors in a nominal capacity to recover insurance proceeds. For the avoidance of doubt, the filing of a proof of claim is sufficient to preserve a right of set off hereunder.

3.    **Releases.**

68.    The releases set forth in Articles X.B and X.C of the Plan are hereby approved and authorized in their entirety.

G.    **SUBSTANTIAL CONSUMMATION.**

69.    Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

H.    **RETENTION OF JURISDICTION.**

70.    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, and this Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

(1)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(2)    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(3)    resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

(4)    ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

(5)    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(6)    adjudicate, decide, or resolve any and all matters related to Causes of Action;

(7)    adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

(8)    enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(9)    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(10)   issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(11)   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions and other provisions contained in Article X and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(12)   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VII;

(13)   enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(14)   determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(15)   enter an order or final decree concluding or closing the Chapter 11 Cases;

(16)   adjudicate any and all disputes arising from or relating to distributions under the Plan;

01:23456537.4

(17)    consider any modifications of the Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(18)    determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

(19)    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(20)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(21)    hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(22)    enforce all orders previously entered by the Bankruptcy Court; and

(23)    adjudicate all other matters over with the Bankruptcy Court has jurisdiction.

## I.    TERM OF INJUNCTIONS OR STAYS.

71.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

## J.    EXEMPTION FROM CERTAIN TRANSFER TAXES AND FEES.

72.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate or personal property transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and

01:23456537.4

upon entry of the Confirmation Order, the appropriate governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

### K.    REVERSAL.

73.    If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of such order.  Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

### L.    NOTICE OF ENTRY OF CONFIRMATION ORDER.

74.    The Debtors are directed to serve a notice of the entry of this Confirmation Order and the establishment of bar dates for certain Claims hereunder, substantially in the form of **Exhibit B** attached hereto and incorporated herein by reference (the "*Confirmation Notice*"), on all parties that received notice of the Confirmation Hearing, no later than 15 Business Days after the Confirmation Date and such service shall be deemed to comply with the requirements of Bankruptcy Rules 2002(a)(7), 2002(f)(3) and (f)(7), 2002(l), 3002(c)(4) and 3020(c)(2).

75.    Pursuant to Bankruptcy Rule 9008, the Debtors are directed to publish the Confirmation Notice once in the national edition of *The Wall Street Journal* and the *Fort Worth Star-Telegram* no later than 15 Business Days after the Confirmation Date.

01:23456537.4

**M.      FINAL ORDER.**

76.      This Confirmation Order is a Final Order and the period in which an appeal must

be filed shall commence upon the entry hereof.

Dated: **August 1**, 2018
      Wilmington, Delaware

                                          Kevin Gross
                                          United States Bankruptcy Judge

01:23456537.4