# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENDURO RESOURCE PARTNERS LLC, | ) Case No. 18-11174 (LSS) |
| Debtor.[1] | ) **Hearing Date:** To be determined |
| | ) **Objection Deadline:** May 1, 2020 at 4:00 p.m. (ET) |

## LIQUIDATING TRUSTEE'S EIGHTH (8TH) OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007, AND LOCAL RULES 3007-1 AND 3007-2

> **PARTIES RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND THEIR DISPUTED CLAIMS IDENTIFIED ON EXHIBITS A, B, AND C TO THE PROPOSED ORDER**

Eric Danner, as the trustee of the Enduro Liquidating Trust (the "*Liquidating Trustee*") in the above-captioned chapter 11 case (the "*Chapter 11 Case*") of Enduro Resource Partners LLC (the "*Debtor*"), hereby files this objection (this "*Objection*") to each of the claims against the Debtor and its affiliated debtors and debtors in possession (collectively, the "*Debtors*") and their estates that are listed on **Exhibits A**, **B**, and **C** (collectively, the "*Disputed Claims*") to the Proposed Order (as defined below), and respectfully states as follows:

## RELIEF REQUESTED

1. By this Objection, the Liquidating Trustee seeks entry of an order, substantially in the form attached hereto as **Exhibit I** (the "*Proposed Order*"), disallowing or modifying the

---

[1] The debtor, along with the last four digits of its federal tax identification number, is Enduro Resource Partners LLC (6288). The mailing address for the debtor is 777 Main Street, Suite 800, Fort Worth, Texas 76102. The chapter 11 cases of certain affiliates of the debtor have been closed. *See* D.I. 416.

26160466.9

Disputed Claims, as indicated in further detail below and on **Exhibits A**, **B**, and **C** to the Proposed Order.

2. In accordance with Rule 3007-1(e)(i)(E) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Liquidating Trustee believes that this Objection complies in all material respects with Local Rule 3007-1.

3. In support of this Objection, the Liquidating Trustee relies on the declaration of the Liquidating Trustee (the "***Danner Declaration***"), a copy of which is attached hereto as **Exhibit II**.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, under Local Rule 9013-1(f), the Liquidating Trustee consents to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are section 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Local Rules 3007-1 and 3007-2.

**GENERAL BACKGROUND**

5. On May 15, 2018 (the "***Petition Date***"), the Debtors filed voluntary petitions in the Court commencing cases (collectively, the "***Chapter 11 Cases***") for relief under the Bankruptcy Code. From the Petition Date through the effective date of their Plan (defined below), the Debtors managed and operated their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

6. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Kimberly A. Weimer, Vice President and Chief Financial Officer of Enduro Resource Partners LLC, in Support of Chapter 11 Petitions and First Day Motions* [D.I. 11], which is fully incorporated herein by reference.

**THE SALES OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

7. By order entered on June 11, 2018 [D.I. 168] (the "***Bid Procedures Order***"), the Court approved the bidding procedures for a sale of all or a portion of the Debtors' assets. In accordance with the Bid Procedures Order, a hearing to approve the Debtors' proposed sale of their assets was held on July 20, 2018. At the conclusion of that hearing, the Court approved the sale of substantially all of the Debtors' assets pursuant to four separate orders corresponding to the Debtors' four asset packages [D.I. 290, 291, 292, 293].

8. Pursuant to the four sale orders, the Court approved the sale of the following assets to the following purchasers:

> a. the Debtors' assets working interests in oil and gas properties in Texas, Louisiana, and New Mexico that were burdened by the "net profits interest" in favor of Enduro Royalty Trust, plus the publicly traded units in Enduro Royalty Trust owned by Enduro Resource Partners LLC, were sold to COERT Holdings 1 LLC pursuant to that certain *Order Authorizing (I) the Sale of the Trust Related Assets of the Debtors Free and Clear of All Liens, Claims,*

*Encumbrances, and Other Interests, (II) the Debtors to Enter Into and Perform Their Obligations Under the Trust Related Assets Purchase Agreement and Related Documents, (III) the Debtors to Assume and Assign Certain Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 290];

b. the Debtors' assets comprised of oil and natural gas properties in the Cotton Valley Play and the Haynesville Play in Caddo and DeSoto Parishes, Louisiana were sold to Comstock Oil & Gas-Louisiana, LLC ("**Comstock**") pursuant to that certain *Order Authorizing (I) the Sale of the North Louisiana Assets of the Debtors Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (II) the Debtors to Enter Into and Perform Their Obligations Under the North Louisiana Purchase Agreement and Related Documents, (III) the Debtors to Assume and Assign Certain Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 291] (the "**North Louisiana Sale Order**");

c. the Debtors' assets located primarily in Wyoming (the "**Wyoming Assets**"), comprised of long-lived conventional waterflood oil properties located in the Willison and Big Horn Basins in Wyoming were sold to Mid-Con Energy Properties, LLC ("**Mid-Con**") pursuant to that certain *Order Authorizing (I) the Sale of the Wyoming Assets of the Debtors Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (II) the Debtors to Enter Into and Perform Their Obligations Under the Wyoming Purchase Agreement and Related Documents, (III) the Debtors to Assume and Assign Certain Contracts and Unexpired Leases, (IV) Waiver of the Stay Periods Under Bankruptcy Rules 6004(h) and 6006(d), and (V) Granting Related Relief* [D.I. 292] (the "**Wyoming Sale Order**"); and

d. the Debtors' assets located primarily in North Dakota and comprised of long-lived conventional waterflood oil properties located in the Willison and Big Horn Basins in North Dakota were sold to Cobra Oil & Gas Corporation pursuant to that certain *Order Authorizing (I) the Sale of the North Dakota Assets of the Debtors Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (II) the Debtors to Enter Into and Perform Their Obligations Under the North Dakota Purchase Agreement and Related Documents, (III) the Debtors to Assume and Assign Certain Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 293].

**THE PLAN AND CONFIRMATION ORDER**

9.    On August 1, 2018, the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Joint Plan of Liquidation of Enduro Resource Partners LLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [D.I. 345] (the "**Confirmation**

26160466.9

4

*Order*"), and thereby confirmed the *Joint Plan of Liquidation of Enduro Resource Partners LLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated July 31, 2018, and attached to the Confirmation Order as Exhibit A (as modified and approved by the Confirmation Order, the "**Plan**"). As described in the *Notice of Occurrence of Effective Date of Debtors' Joint Plan of Liquidation* [D.I. 387], the Plan was consummated and became effective on September 5, 2018 (the "***Effective Date***").

10. As of the Effective Date, the Enduro Liquidating Trust was formed, pursuant to the Plan Administration Trust Agreement, and all assets of the Debtors were transferred and assigned to the Enduro Liquidating Trust. The Enduro Liquidating Trust was established for the primary purpose of liquidating its assets and for making Distributions in accordance with the Plan and the Plan Administration Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Enduro Liquidating Trust. As the trustee of the Enduro Liquidating Trust, the Liquidating Trustee has the authority to, among other things, (i) prosecute, compromise, and settle, in accordance with the specific terms of the Plan Administration Trust Agreement, Retained Causes of Action; (ii) resolve issues involving Claims and Interests, other than First Lien Claims, pursuant to Article IX of the Plan; (iii) file, settle, compromise, withdraw, or litigate to judgment any objections to Claims; (iv) cause all distributions to be made to Holders of Claims other than First Lien Claims; and (v) undertake all administrative functions of the Debtors' Chapter 11 Cases. Plan Art. V(E); VII(B); VIII(B).

11. On October 16, 2018, the Court entered an order [D.I. 416] closing all of the Debtors' Chapter 11 Cases other than the Chapter 11 Case of Enduro Resource Partners LLC,

26160466.9

which was left open to administer the remaining work and claims reconciliation process in the Debtors' Chapter 11 Cases.

### THE DEBTORS' SCHEDULES, THE BAR DATE ORDER, AND THE CLAIMS RECONCILIATION PROCESS

12. On May 17, 2018, the Court entered an order [D.I. 58] appointing Kurtzman Carson Consultants LLC ("**KCC**") as the claims and noticing agent in the Debtors' Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in the Chapter 11 Cases and (b) maintain the official claims register for the Debtors.

13. On June 8, 2018, the Debtors filed their schedules of assets and liabilities and statements of financial affairs pursuant to Bankruptcy Rule 1007 and Local Rule 1007-1 [D.I. 148-159] (collectively, the "*Schedules*"). On July 26, 2018, the Debtors filed amendments to the Schedules [D.I. 317-326].

14. On June 11, 2018, the Court entered an order [D.I. 162] (the "***Bar Date Order***") establishing, *inter alia*, July 16, 2018 (the "***General Bar Date***") as the general bar date for the filing of proofs of claim against the Debtors and November 12, 2018 (the "***Governmental Bar Date***") as the deadline for governmental units to file proofs of claim against the Debtors.[2] On June 12, 2018, the Debtors filed the *Notice of Deadline for the Filing of Proofs of Claim, Including for Claims Asserted under Section 503(b)(9) of the Bankruptcy Code* [D.I. 181] (the "***Bar Date Notice***"), pursuant to which the Debtors provided notice of, *inter alia*, the General Bar Date and the Governmental Bar Date. The Debtors served the Bar Date Notice in

---

[2] The Bar Date Order also provides that if the Debtors amend or supplement the Schedules on or after the date on which the Debtors served notice of the Bar Date, then the Debtors shall serve the affected claimants with notice of the applicable amendments or supplements to the Schedules, and the deadline for the affected claimants to submit proofs of claim by the later of (i) the applicable Bar Date or (ii) 5:00 p.m. (ET) on the date that is twenty-one (21) days from the date of such notice. The deadline for affected claimants to file proofs of claim to the amended Schedules was August 16, 2018 at 5:00 p.m. (ET).

26160466.9

accordance with the procedures set forth in the Bar Date Order. *See* D.I. 200, 210, 233 & 255 (Affidavits of Service).

15. To date, 555 proofs of claim have been filed against the Debtors. Since the Effective Date, the Liquidating Trustee and his advisors have spent considerable time reviewing, reconciling, and analyzing the filed proofs of claim to determine whether to pursue objections to such Claims. As a result of these efforts, the Liquidating Trustee has filed four notices of satisfaction [D.I. 487, 524, 525 & 569] and seven omnibus objections to claims [D.I. 479, 489, 490, 547, 548, 565 & 570], which objections were sustained by the Court [D.I. 496, 511, 512, 547, 577, 581 & 592].

16. The Liquidating Trustee has nearly completed his review of the Debtors' claims register. Of the approximately 555 proofs of claim filed in the Debtors' Chapter 11 Cases, approximately 471 have been disallowed, expunged or objected to in the first seven omnibus objections, and approximately 71 have been allowed or otherwise settled.

17. Each of the remaining 13 proofs of claims, with the exception of Claim No. 225 (discussed below), directly implicates the United States Department of the Interior (the "**DOI**"). In particular, the United States Department of the Interior, Office of Natural Resources Revenue (the "**ONRR**") filed three duplicative claims, Claim Nos. 327, 328, and 337, based on unpaid federal royalty amounts. For the reasons discussed below, the Liquidating Trustee does not believe there is any basis in law or fact for the payment of the full amount asserted in the ONRR's claims. The Liquidating Trustee has expressed this position to the ONRR on multiple occasions with substantial supporting documentation, and has offered to settle the ONRR's claims with detailed explanations regarding the Liquidating Trustee's proposed settlement amount, but the ONRR has been generally non-responsive.

18.  U.S. Specialty Insurance Company ("*USSIC*") filed a duplicative claim against each Debtor, Claim Nos. 412, 417, 418, 419, 420 & 421, related to certain surety bonds issued by USSIC in relation to certain of the Debtors' assets.  To the best of the Liquidating Trustee's knowledge, the only remaining outstanding surety bond issued by USSIC is bond no. B007125 (the "*Surety Bond*"), which was issued in favor of the United States Department of the Interior, Bureau of Land Management in the amount of $202,500.  The Surety Bond provides coverage for outstanding liability related to any unpaid royalties, among other things, and the ONRR has refused to release the Surety Bond until the federal royalty amounts asserted in the ONRR's claims are paid.  Thus, the Liquidating Trustee believes that the resolution of the ONRR's claims will also resolve the claims filed by the USSIC.[3]

19.  Finally, the United States Department of the Interior, Bureau of Land Management, Wyoming State Office (the "*BLM*") filed three contingent, protective claims in connection with the "performance of reclamation on rights of way authorizations (off-lease) and gas authorizations (on-lease)" related to the Debtors' property in Wyoming.  As discussed above, the Debtors' property in Wyoming was sold to Mid-Con in July 2018 pursuant to the Wyoming Sale Order.  In connection with the sale, Mid-Con assumed all post-closing liability for such obligations.  Thus, at the latest, the BLM should have known of any potential liability in connection with its protective claims by July 2018.  Despite this, and despite numerous requests by the Liquidating Trustee, the BLM has failed to respond with a liquidated amount for its contingent claims or to confirm whether it is continuing to pursue such claims.

---

[3]  Due to the outstanding Surety Bond issue, USSIC's claims are not included in this Objection. The Liquidating Trustee reserves all rights to object to those claims in a future objection if resolution of ONRR's claims does not result in a withdrawal of USSIC's claims.

26160466.9

20. Thus, due to the inaction of the various branches of the DOI, the Liquidating Trustee has been unable to complete the claims reconciliation in the Debtors' Chapter 11 Cases, issues distributions to creditors, and close the remaining Chapter 11 Case. While the Liquidating Trustee hoped a consensual resolution with the DOI could be reached, he was left with no alternative but to file this Objection and the *Liquidating Trustee's Ninth (9th) Omnibus (Non-Substantive) Objection to Claims Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rules 3007-1 and 3007-2*, filed contemporaneously herewith, in order to avoid any further delay to the administration of this Chapter 11 Case.

## OBJECTION TO DISPUTED CLAIMS

### I. General No Liability Claim

21. The Disputed Claim identified on **Exhibit A** to the Proposed Order (the "***No Liability Claim***"), Claim No. 225 filed by Willie and Francis McNeil ("***McNeil***"), is a claim for which the Debtors are not liable. Following a review of the No Liability Claim and the supporting materials attached thereto, as well as the Debtors' books and records, the Liquidating Trustee has determined that the Debtors are not liable for the No Liability Claim for the reasons set forth under the column titled "*Reason(s) for Disallowance*" on Exhibit A to the Proposed Order.

22. More specifically, after reviewing the No Liability Claim, the Liquidating Trustee does not believe that any amount is due and owing to McNeil on account of such claim. While the No Liability Claim provides documentation, the documentation does not establish any current liability against the Debtors and McNeil did not list an asserted claim amount. Moreover, the No Liability Claim is based on an oil and gas lease (the "***Lease***"). The Lease was listed on that certain *Notice of Possible Assumption and Assignment of Certain Executory*

26160466.9

*Contracts and Unexpired Leases in Connection with Sale* [D.I. 184] (the "**Cure Notice**") with a proposed $0.00 cure amount (the "**Proposed Cure Amount**").

23. In accordance with the Bid Procedures Order, the Cure Notice established the deadline to object to the Proposed Cure Amount as 5:00 p.m. on June 27, 2018. McNeil did not object to the Proposed Cure Amount. Accordingly, in accordance with the Bid Procedures Order, the claimant was *"forever . . . barred and estopped from objecting . . . to the Cure Amount as the amount to cure all defaults to satisfy section 365 of the Bankruptcy Code and from asserting that any additional amounts are due or defaults exist[.]"* Bid Procedures Order ¶11. The Lease was assumed and assigned to Comstock pursuant to the North Louisiana Sale Order.

24. Thus, the Liquidating Trustee believes that the No Liability Claim should be disallowed. Failure to disallow the No Liability Claims would result in the McNeil receiving an unwarranted recovery against the Debtors' estates to the detriment of other creditors in the Chapter 11 Cases.

25. Accordingly, the Liquidating Trustee requests entry of the Proposed Order disallowing the No Liability Claim identified on **Exhibit A** to the Proposed Order.

### II.   Contingent Claims

26. The Disputed Claims identified on **Exhibit B** to the Proposed Order (collectively, the "**Contingent Claims**") consist of contingent claims filed by the BLM in connection with the "performance of reclamation on rights of way authorizations (off-lease) and gas authorizations (on-lease)."

27. The documentation attached to the Contingent Claims states that such claims are "protective in nature" and reflect "the estimated costs that would be incurred to comply with the Debtor's reclamation obligations." While the BLM distinguishes between "actual liabilities" and "protective liabilities" in the Contingent Claims, the BLM clarifies that "the entire proof of claim

26160466.9

is 'protective' in nature" and "meant to protect the interests of the United States in the event that the Debtor fails to comply with its legal obligations to perform reclamation and the government is forced to undertake, or incur the costs of commissioning someone other than the Debtor to undertake, the Debtor's obligations."

28. Pursuant to the Wyoming Sale Order, the Court authorized the Debtors to sell the Wyoming Assets to Mid-Con in accordance with the Wyoming Purchase Agreement (as defined in the Wyoming Sale Order). The Wyoming Sale Order provides that "[a]ny liability for post-Closing plugging and abandonment or other decommissioning obligations related to the Federal Leases shall be assumed by the Wyoming Purchaser (or its successors and assigns) and the Wyoming Purchaser shall be liable for such obligations, in each case with respect to the Federal Leases or otherwise." Wyoming Sale Order ¶41.

29. The Liquidating Trustee submits that the Debtors have no liability on account of any of the Contingent Claims. The Liquidating Trustee believes that each of the Contingent Claims was filed as a protective measure on the Governmental Bar Date. The Liquidating Trustee is not aware of an actual claim for performance of reclamation by the BLM and any such obligations that arose after the sale to Mid-Con were assumed by Mid-Con. The Liquidating Trustee has contacted the BLM multiple times since the Effective Date to determine whether the BLM is still asserting the Contingent Claims and whether a liquidated amount has been determined but the BLM has failed to respond. Accordingly, because the Liquidating Trustee is not aware of any liability related to the Contingent Claims, and the BLM has failed to substantiate its protective claims despite the Liquidating Trustee's repeated requests for more information, each of the Contingent Claims should be disallowed.

26160466.9

11

30. Accordingly, the Liquidating Trustee requests entry of the Proposed Order disallowing the Contingent Claims identified on **Exhibit B** to the Proposed Order.

### III. Modified Amount Claim

31. The Disputed Claim listed on **Exhibit C** to the Proposed Order (the "*Modified Amount Claim*") was filed by the ONRR against Enduro Operating, LLC ("*Enduro Operating*") on account of certain unpaid federal royalties arising under certain federal leases[4] (the "*Federal Leases*") for two periods: (1) 01/01/2012-12/31/2014 (the "*First Period*") and (2) 01/01/2015-12/31/2017 (the "*Second Period*"). The Modified Amount Claim seeks payment of $567,957.75 based on the ONRR's "audit findings of $283,857.56 for Federal leases located in Washakie County, WY" for the First Period "plus an estimate of $283,857.56 for the same leases" for the Second Period.

32. When the Wyoming Sale Order was entered, the ONRR was conducting an audit (the "*Audit*") concerning the federal royalties Enduro Operating computed and paid on its oil and natural gas production during the First Period. Accordingly, the Debtors and the ONRR agreed to include certain language in the Wyoming Sale Order permitting the Audit for the First Period to "continue in an administrative proceeding until a final determination has been made by the [Department of Interior]." Wyoming Sale Order ¶40. Pursuant to the Wyoming Sale Order, the Debtors and Mid-Con retained all defenses and/or rights, other than defenses and/or rights arising from the bankruptcy, to challenge any such determination, but any such challenge was required to be raised in the United States' administrative review process leading to a final agency determination by the DOI. The Wyoming Sale Order did not provide any limitations on the Debtors' ability to challenge the DOI's determinations for the Second Period.

---

[4] The federal leases include Federal Agreement Nos. 891000463A, 891000463B, 891013883A, 891008875A, and 891012498A

33. Putting aside the ONRR's calculation of the federal royalties due for the First Period, and assuming it was accurate,[5] the ONRR has not provided any basis for asserting the same amount of federal royalties for the Second Period. As set forth in the chart below, downstream residue gas, plant product, and condensate sales volumes and pricing attributed to Enduro Operating's federal gas production were significantly lower in the Second Period than in the First Period. For example, not only were residue gas sales volumes during the Second Period on average approximately only 60.5% of the sales volumes from the First Period, but also residue gas pricing during the Second Period was on average approximately only 75.8% of the pricing at which residue gas volumes were sold during the First Period. Consequently, residue gas, plant product, and condensate sales values (derived from volume and pricing) attributed to Enduro Operating's federal gas production during the Second Period amounted to approximately only 45.9%, 31.6%, and 41.7%, respectively, of the same sales values from the First Period. Accordingly, the federal royalty value due on Enduro Operating's production from the Second Period would have been approximately 42.0% of the federal royalty due during the First Period.

---

[5] While the Liquidating Trustee disputes the methodology used by the ONRR to calculate the federal royalties due for the First Period, in the interest of resolving the ONRR's claims and preventing any further delay to the administration of the Debtors' Chapter 11 Cases, the Liquidating Trustee is not objecting to such methodology.

26160466.9

| Comparison Chart | | | | | |
|---|---|---|---|---|---|
| Category | First Period 2012-2014 Figures | Second Period 2015-2017 Figures | Second Period Figure as % of First Period Figure | First Period 2012-2014 Audit Method Royalty Calculation | Second Period 2015-2017 Audit Method Royalty Calculation |
| Gas Sales Volume | 936,117 | 566,296 | 60.5% | | |
| Gas Sales Value | $ 3,130,458 | $ 1,436,219 | 45.9% | $ 173,189.18 | $ 79,493.83 |
| $/MCF | $ 3.344 | $ 2.536 | 75.8% | | |
| Plant Prod Volume | 3,696,171 | 2,819,680 | 76.3% | | |
| Plant Prod Value | $ 4,176,971 | $ 1,317,910 | 31.6% | $ 63,178.21 | $ 19,964.31 |
| $/Gal | $ 1.130 | $ 0.467 | 41.3% | | |
| Condensate Volume | 15,518 | 11,458 | 73.8% | | |
| Condensate Value | $ 995,183 | $ 415,355 | 41.7% | $ 50,666.80 | $ 21,128.06 |
| $/BBL | $ 64.131 | $ 36.250 | 56.5% | | |
| GROSS TOTAL | | | | $ 287,034.19 | $ 120,586.20 |
| Less: 2012 Unprocessed Gas Filing Reduction | | | | $ (3,176.63) | $ - |
| NET TOTAL | | | | $ 283,857.56 | $ 120,586.20 |
| | First Period vs. Second Period Royalty Claim % Difference --> | | | | 42.0% |
| Source: Enduro books & records. | | | | | |

34. Despite this, the ONRR seeks the same royalty amount for the First Period and the Second Period. The ONRR has not provided any explanation as to why its self-described estimate for the Second Period should not be re-assessed based on the actual downstream gas volumes and values during the Second Period. Accordingly, the Liquidating Trustee believes that the Modified Amount Claim should be modified to reflect a claim of $283,857.56 for the First Period based on the ONRR's Audit[6] and a claim of $120,586.20 for the Second Period, based on the actual downstream residue gas, plant product, and condensate sales volumes, pricing, and resulting values during that period.

---

[6] For the avoidance of doubt, the Liquidating Trustee is allowing ONRR's claim for the First Period in full.

26160466.9

14

35. In addition, the ONRR is holding a cash deposit (the "*Cash Deposit*") in the amount of $139,891.10 in an account on behalf of Enduro Operating, as set forth in the Federal Statement of Account – Open Items attached hereto as **Exhibit III**. The Liquidating Trustee is aware of no reason why the Cash Deposit should not be returned to the Liquidating Trustee and has articulated this position to the ONRR on multiple occasions. Despite this, the ONRR has failed to respond to the Liquidating Trustee or to return the Cash Deposit. Accordingly, the Liquidating Trustee seeks to further reduce the Modified Amount Claim by the amount of the Cash Deposit, resulting in a total claim amount of $264,552.66, as set forth in **Exhibit C** to the Proposed Order. This amount will be paid in full as the cure amount under the Federal Leases that were assumed and assigned to Mid-Con pursuant to the Wyoming Sale Order.[7]

36. Any failure to modify the Modified Amount Claim as indicated on **Exhibit C** to the Proposed Order will result in the ONRR receiving an unwarranted recovery against the Debtors' estates, to the detriment of other creditors in the Chapter 11 Cases. Accordingly, the Liquidating Trustee objects to the Modified Amount Claim, and requests entry of the Proposed Order modifying the Modified Amount Claim as indicated on **Exhibit C** to the Proposed Order.

---

[7] The Wyoming Sale Order provides, in relevant part, that "in order to obtain the consent of the United States to the assumption, sale, assignment and/or transfer of any interests in a Federal Lease, all existing defaults under such Federal Lease, including, without limitation, any outstanding rents or royalties known and satisfactorily documented to date, plus any accrued and unpaid interest lawfully chargeable must be paid (*i.e.*, assumed and/or cured, to the extent appropriate), and nothing in the Sale Documents shall be interpreted to set cure costs for the Federal Leases . . . Without limiting the foregoing, with respect to Department of Interior ("*DOI*") Federal Leases, the DOI will retain, and have, the right to audit and/or perform any compliance review, and if appropriate, receive payment of any additional monies owed by the Debtors prior to the sale, assumption, assignment and/or transfer of the Federal Lease(s) without those rights being adversely affected by these bankruptcy proceedings." Wyoming Sale Order ¶40. In addition, pursuant to the Wyoming Purchase Agreement (as defined in the Wyoming Sale Order), the Debtors agreed to indemnify Mid-Con "from and against any and all Liabilities, arising from, based upon, related to or associated with . . . (c) any liabilities for . . . royalties payable with respect to the Assets attributable to the period prior to the Effective Time[.]" Wyoming Purchase Agreement §13.2(c). Notably, the ONRR has already made a demand on Mid-Con related to the unpaid royalties for the First Period and Mid-Con has already sought indemnification for such royalties from the Debtors in accordance with the Wyoming Purchase Agreement.

## RESPONSES TO THIS OBJECTION

37. Any responses to this Objection must be filed **on or before 4:00 p.m. (ET) on May 1, 2020**, in accordance with the procedures set forth in the notice of this Objection.

## BASIS FOR RELIEF REQUESTED

38. Section 502(b) of the Bankruptcy Code provides in pertinent part that:

> the court, after notice and a hearing, shall determine the amount of [a] claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

11 U.S.C. § 502(b)(1).

39. The Disputed Claims noted above are unenforceable against the Debtors, in the amounts asserted, because they assert amounts for which the Debtors are not liable.

40. Therefore, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1, the Liquidating Trustee respectfully requests that the Court enter an order disallowing or modifying the Disputed Claims as detailed in the exhibits attached to the Proposed Order.

## RESERVATION OF RIGHTS

41. The Liquidating Trustee reserves the right to adjourn the hearing on any Disputed Claim, and in the event that the Liquidating Trustee does so, the Liquidating Trustee will state the same in the agenda for the hearing on that Disputed Claim, which agenda will be served on the applicable claimant.

42. The Liquidating Trustee reserves any and all rights to amend, supplement or otherwise modify this Objection, the Proposed Order, or **Exhibits A**, **B**, and **C** thereto and to file additional objections to any and all claims filed in the Chapter 11 Cases, including, without

26160466.9

limitation, any and all of the Disputed Claims. The Liquidating Trustee also reserves any and all rights, claims, and defenses with respect to any and all of the Disputed Claims, and nothing included in or omitted from this Objection, the Proposed Order, or the exhibits thereto is intended or shall be deemed to impair, prejudice, waive, or otherwise affect any rights, claims, or defenses of the Liquidating Trustee with respect to the Disputed Claims.

## **NOTICE**

43. Notice of this Objection has been provided to the following parties: (a) the United States Trustee for the District of Delaware; (b) all parties that, as of the filing of this Objection, have requested notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002; and (c) claimants whose Disputed Claims are subject to this Objection. The Liquidating Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

*[remainder of page intentionally left blank]*

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Liquidating Trustee respectfully requests that the Court (a) enter the Proposed Order, and (b) grant such other and further relief as may be just and proper.

Dated: April 17, 2020  
       Wilmington, Delaware

*/s/ Elizabeth S. Justison*
Kara Hammond Coyle (No. 4410)
Elizabeth S. Justison (No. 5911)
Betsy L. Feldman (No. 6410)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 571-6600
Facsimile:   (302) 571-1253
Email:   kcoyle@ycst.com
          ejustison@ycst.com
          bfeldman@ycst.com

*Counsel to the Liquidating Trustee*